RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-1671

RILEY PATRICK LIVELY,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Western District of Michigan at Grand Rapids.
No. 1:13-cr-00162—Robert J. Jonker, District Judge.

Argued:  June 16, 2016

Decided and Filed:  March 27, 2017

Before:  MOORE, SUTTON, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Stuart G. Friedman, Southfield, Michigan, for Appellant. Tessa K. Hessmiller, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Stuart G. Friedman, Southfield, Michigan, for Appellant. Tessa K. Hessmiller, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court in which SUTTON, J., joined, and DONALD, J., joined in part.  DONALD, J. (pg. 25), delivered a separate opinion concurring in part and in the judgment.

—————————

**OPINION**

—————————

KAREN NELSON MOORE, Circuit Judge. Title 18 U.S.C. § 2251(a) is a statute with two parts. It criminalizes (1) sexually exploiting a minor "for the purpose of producing any visual depiction of" that sexual exploitation (2) if, among other things, "that visual depiction was produced or transmitted using materials that have" a nexus to interstate or foreign commerce.

In this case, there is no question that the government has satisfied the first part of § 2251(a). In April 2009, Riley Lively sexually abused a nine-year-old boy. Lively's friend, Robert Norwood-Charlier, took four photographs of that encounter with a Kodak digital camera that held a SanDisk digital memory card (the "SanDisk Images"). Plainly, Lively sexually abused the boy "for the purpose of producing" those four "visual depictions" of this sexual abuse.

A closer question is whether the government has also satisfied § 2251(a)'s second part: its interstate-commerce requirement. At some time after he photographed Lively abusing the boy, Norwood-Charlier copied the four images of that incident from his camera's SanDisk memory card onto his computer's Seagate hard drive. The parties stipulated that that hard drive was manufactured in Thailand. At Lively's trial, the government relied exclusively on the Seagate hard drive's origin to satisfy § 2251(a)'s interstate-commerce element. The government did not, however, introduce any evidence suggesting that Lively knew Norwood-Charlier owned the Seagate hard drive—let alone that Lively intended Norwood-Charlier to copy images of Lively and the boy onto it. Put simply, the government did not prove that Lively sexually abused the boy for the purpose of producing the visual depictions that ended up on Norwood-Charlier's hard drive (the "Hard-Drive Images").

Under the government's reading of § 2251(a), it was enough to prove that Lively sexually abused the boy for the purpose of producing *some* visual depiction of child pornography, as long as *someone*, *somewhere*, at *some time* actually produced a visual depiction of Lively abusing the boy using materials that had been transmitted in interstate or foreign commerce. Thus, when

Lively moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the government had failed to satisfy § 2251(a)'s interstate-commerce requirement, the government pointed to Norwood-Charlier's Thai-made hard drive—and only the hard drive.

That was a tactical error. The government's reading of § 2251(a) is inconsistent with the statute's text. It ignores the statute's structure. And it finds no support in caselaw interpreting § 2251(a).

Nevertheless, we conclude that the government introduced additional evidence that—viewed in the light most favorable to the government—satisfied § 2251(a)'s interstate-commerce requirement. For that reason, we must reject Lively's Rule 29 argument on appeal. Lively raises two additional challenges to his conviction, but both are unavailing.

For the reasons set forth below, we **AFFIRM** Lively's conviction.

## I. FACTS AND PROCEDURE

### A. Facts

In April 2009, Norwood-Charlier invited Lively and Bryon Quackenbush to spend the weekend with him in Kalamazoo, Michigan. R. 28 (Gov't Resp. to Def.'s Mot. to Dismiss Indictment at 3) (Page ID #78); R. 86 (Trial Tr. (Schomer) at 161:3–5, 168:19–169:1) (Page ID #712, 719–20). The three men met in online chatrooms: Lively lived in California, and Quackenbush lived in Nevada. PSR ¶ 21; R. 28 (Gov't Resp. to Def.'s Mot. to Dismiss Indictment at 1) (Page ID #76). Norwood-Charlier was living with Michelle Schomer, the ex-wife of Norwood-Charlier's father. R. 86 (Trial Tr. (Schomer) at 161:25–162:12 (Page ID #712–13). Schomer had three children, including Lively's victim, who was nine years old at the time of Lively's visit. *Id.* at 160:9–161:2 (Page ID #711–12).

Lively does not dispute what happened next. Norwood-Charlier photographed Lively performing oral sex on the boy in the boy's bedroom. R. 87 (Trial Tr. at 359:21–360:21) (Page ID #910–11). The incident was pre-planned: Norwood-Charlier invited Lively and Quackenbush to Michigan so they could sexually abuse this boy and another of Schomer's children. PSR ¶ 25.

On April 27, 2009, FBI agents executed a search warrant at Norwood-Charlier's home. R. 87 (Trial Tr. (Johnson) at 234:7–11) (Page ID #785). The agents were searching for "objects or articles" used to produce child pornography. *Id.* at 234:14–21 (Page ID #785). They arrested Norwood-Charlier and recovered three items that would prove important in Lively's eventual prosecution: Norwood-Charlier's Kodak digital camera, the SanDisk memory card that was inside the camera, and a computer that contained a Seagate hard drive. *Id.* at 234:22–24, 237:6–14, 244:21–245:4 (Page ID #785, 788, 795–96); R. 87 (Trial Tr. (Zentz) at 287:8–14, 292:5–23, 294:5–7) (Page ID #838, 843, 845).

Norwood-Charlier was eventually indicted for, and pleaded guilty to, producing two child-pornography videos. R. 28 (Gov't Resp. to Def.'s Mot. to Dismiss Indictment at 2) (Page ID #77). In April 2010, Norwood-Charlier entered into a plea agreement with the government and proffered information that led to Lively's prosecution: Norwood-Charlier admitted that he had photographed Lively performing oral sex on a child in April 2009 and that he had shared child pornography with Lively and Quackenbush. *Id.* at 3–4 (Page ID #78–79).

In 2013, the government moved forward with prosecuting Lively, who at that time was living with Quackenbush in Nevada. *Id.* at 5 (Page ID #80). Lively and Quackenbush were both arrested and charged with various child-pornography offenses. *Id.* at 5–6 (Page ID #80–81).

## B. Procedural History

On September 12, 2013, a grand jury in the Western District of Michigan indicted Lively for sexually exploiting a minor in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256(2)(A). R. 1 (Indictment at 1–2) (Page ID #1–2). The indictment alleged that Lively had produced four images of himself performing oral sex on a minor "using materials that had been manufactured outside the State of Michigan, including but not limited to a Seagate hard drive manufactured in Thailand." *Id.* Lively pleaded not guilty. R. 9 (3/6/14 Criminal Minute Sheet) (Page ID #20).

On May 31, 2014, Lively moved to dismiss the indictment for pre-indictment delay. R. 21 (Mot. to Dismiss Due to Pre-Indictment Delay) (Page ID #54). Lively argued that the four-year delay between Norwood-Charlier's arrest and Lively's indictment violated his Fifth Amendment right to due process. R. 22 (Br. in Support of Mot. to Dismiss Due to Pre-

Indictment Delay at 3) (Page ID #57).  That delay, Lively argued, was due to the government's negligence, and it prejudiced Lively because the lapse of time inhibited him from raising an effective insanity defense.  *Id.* at 9–12 (Page ID #63–66).

The district court denied Lively's motion to dismiss.  R. 31 (8/13/13 Order) (Page ID #93).  It held that the four-year delay did not prejudice Lively because his insanity claim was "speculative at best."  *Id.* at 2 (Page ID #94).  Moreover, the court held that Lively had failed to raise a valid Fifth Amendment claim because he had not shown that the government *intentionally* delayed prosecuting Lively.  *Id.* at 3 (Page ID #95).

Lively's jury trial began on January 27, 2015.  R. 86 (Trial Tr.) (Page ID #552).  Three parts of the government's case bear mention here:

1.  Lively's victim testified.  R. 87 (Trial Tr. (Victim) at 215:18–20) (Page ID #766). Through the boy, the government introduced three images:  Government Exhibits 12a, 13a, and 14a.  *Id.* at 219:9–220:4 (Page ID #770–71).  The boy testified that those three images depicted Lively sexually abusing him.  *Id.* at 218:14–219:8 (Page ID #769–70).  The prosecution then showed the boy three different images:  Government Exhibits 12, 13, and 14.  *Id.* at 220:22–221:12 (Page ID #771–72).  The boy confirmed that Government Exhibits 12, 13 and 14 depicted the same events as Government Exhibits 12a, 13a, and 14a, respectively.  *Id.*

2.  The government introduced Norwood-Charlier's SanDisk memory card, together with Norwood-Charlier's Kodak camera, as one exhibit:  Government Exhibit 11.  R. 87 (Trial Tr. (Johnson) at 237:23–238:6) (Page ID #788–89).  The district court admitted Government Exhibit 11 as a full exhibit; it did not give Lively's jury an instruction limiting the reasons for which they could consider the Kodak camera or the SanDisk memory card.  *Id.*

FBI forensic examiner Walker Sharp testified that he found Government Exhibits 12a, 13a, and 14a, and one additional image of Lively abusing the boy, Government Exhibit 15a, on the SanDisk memory card that was inside Norwood-Charlier's Kodak camera.  R. 87 (Trial Tr. (Sharp) at 248:6–22, 251:5–14, 253:19–257:12, 265:9–18) (Page ID #799, 802, 804–08, 816).

The SanDisk memory card bore a trade inscription: "Made in China." 6th Cir. R. 25-2 (Exs. to Gov't Letter Regarding Trial Exhibit).[1] The Kodak camera did not bear a trade inscription. *Id.* During Sharp's direct examination, the prosecution placed the SanDisk card on a projector so the jury could see a magnified image of it. R. 87 (Trial Tr. (Sharp) at 249:19–250:10) (Page ID #800–01). One of the two government attorneys prosecuting Lively subsequently handed the SanDisk card to the jury so the jurors could view it themselves. *Id.* at 250:11–15 (Page ID #801). However, nobody—not the government, not Lively, not the district court—referenced the SanDisk memory card's trade inscription, or its country of origin, during the government's case-in-chief.

3. The government also introduced into evidence Norwood-Charlier's Seagate hard drive. R. 87 (Trial Tr. (Zentz) at 292:5–294:7) (Page ID #843–45). The parties stipulated that the hard drive "was manufactured [in Thailand] and was shipped or transported in interstate or foreign commerce." R. 87 (Trial Tr. at 284:6–15) (Page ID #835). The prosecution read the parties' stipulation to the jury. *Id.* One of the government's experts, Matthew Zentz, corroborated this information; he testified that the Seagate hard drive was marked "Product of Thailand." R. 87 (Trial Tr. (Zentz) at 294:8–11) (Page ID #845). Zentz also testified that the Seagate hard drive contained multiple copies of four images of Lively sexually abusing the boy: Government Exhibits 12, 13, 14, and 15. *Id.* at 296:1–6, 297:22–302:1 (Page ID #847, 848–53). These four exhibits, Zentz explained, were separate "images" located in the thumbnail cache of Norwood-Charlier's Seagate hard drive. *Id.* at 296:1–297:11, 324:19–325:21 (Page ID #847–48, 875–76).

After the government concluded its case-in-chief, Lively moved for a judgment of acquittal under Rule 29. R. 87 (Trial Tr. at 330:21–23) (Page ID #881). As relevant here, Lively

---

[1]There are no documents in the district-court record that confirm the SanDisk memory card's origin. Although the card was admitted into evidence at Lively's trial, as we explain *infra*, there is no mention of its trade inscription in the trial transcript. Consequently, after the parties argued this appeal before us, our Clerk's Office contacted the United States Attorney's Office for the Western District of Michigan to ask if we could view Government Exhibit 11 ourselves. On August 3, 2016, the government responded with a letter explaining that Government Exhibit 11 is in "[c]ontinuous FBI custody," and thus that we could not easily examine the SanDisk card. 6th Cir. R. 25-1 (Letter from Tessa Hessmiller, Assistant United States Attorney, to Deborah S. Hunt, Clerk, dated Aug. 3, 2016). Instead, the government provided six color photographs of Government Exhibit 11, one of which confirms that the SanDisk memory card bears the trade inscription, "Made in China."

argued that the government could not satisfy 18 U.S.C. § 2251(a)'s interstate-commerce element with Norwood-Charlier's hard drive alone. *Id.* at 331:14–332:16 (Page ID #882–83). That hard drive, Lively claimed, "did not produce the visual depiction[s]" of Lively abusing a minor; Norwood-Charlier's Kodak camera did, but the government had not proven that the camera had a nexus to interstate or foreign commerce. *Id.* at 331:18–19, 332:1–11 (Page ID #882–83). Moreover, Lively argued that the government had introduced "no evidence that [Lively] had knowledge that" any images of himself were "ever on" Norwood-Charlier's Seagate hard drive. *Id.* at 332:3–7 (Page ID #883); *see also id.* at 334:6–9 (Page ID #885).

The government countered that the Seagate hard drive satisfied completely § 2251(a)'s interstate-commerce requirement. "[U]nder the law," the prosecution argued, "the fact that the image went through that hard drive . . . as part of its production process is sufficient to establish the interstate nexus element." *Id.* at 333:6–9 (Page ID #884). The government added: "there is no requirement that the defendant Riley Lively knew that that picture would go through the hard drive." *Id.* at 333:9–11 (Page ID #884).

The district court sided with the government. *Id.* at 334:24–335:1 (Page ID #885–86). In denying Lively's Rule 29 motion, the district court endorsed the government's broad theory of § 2251(a) liability:

> With respect to the element of interstate or foreign commerce, I think that the jury could return a verdict for the government on that element as well in a reasonable way. I don't think there's any requirement that the interstate commerce nexus be satisfied with respect to the original item that created the image. Every subsequent publication of the image counts. So even if there's nothing with respect to the camera that initially captured the shot, the fact that we have an agent who said it's on the computer tower, and everybody agrees the computer tower included the hard drive that contained the images that was itself manufactured in Thailand is enough to establish the element, regardless of whether anybody knew it at the time. It's simply a matter of fact or not fact.

*Id.* at 336:1–14 (Page ID #887).

Before trial, the parties filed joint proposed jury instructions. R. 43 (Joint Proposed Jury Instructions and Special Verdict Form) (Page ID #145). Two of the proposed instructions are relevant here. First, their preliminary instruction describing the elements of Lively's offense

stated that the government needed to prove "[t]hat the material or equipment used to produce the photographs [of Lively and his victim] came from outside the state of Michigan, or outside the country." *Id.* at 5 (Page ID #149). Second, Joint Proposed Instruction No. 11, which also defined the elements of Lively's offense conduct, stated that "[t]he term 'producing' means producing, directing, manufacturing, issuing, publishing, or advertising. The defendant need not be the one who took the picture." *Id.* at 8 (Page ID #152).

At trial, however, Lively asked for an additional instruction regarding the term "producing." He requested "that the jury be instructed that the interstate commerce element has to be proven with regard to the device that produced the image"—in his mind, Norwood-Charlier's Kodak camera. R. 87 (Trial Tr. at 339:24–340:9) (Page ID #890–91). The district court declined to adopt this instruction, reasoning that "the government [did not have] to show that the Kodak camera or that any camera that originally took the photo had an interstate or foreign commerce nexus as long as some interstate or foreign nexus is there with respect to the visual depiction in some form." *Id.* at 341:12–19 (Page ID #892).

Lively did not put on a case. The government began its closing argument by telling Lively's jury: "this was a case about four pictures." *Id.* at 360:16–17 (Page ID #911). The four images of Lively sexually abusing the boy that were recovered from Norwood-Charlier's hard drive, the prosecution argued, were the same four images found on the SanDisk memory card. *Id.* at 360:22–361:15 (Page ID #911–12).

Turning to the elements of § 2251(a), the prosecution stated that in order to convict Lively, the jury would have to answer affirmatively three questions: (1) "Did Riley Lively engage in sexually explicit conduct with a child?"; (2) "[D]id he do so for the purpose of producing a picture?"; and (3) "[W]as the picture produced using materials made outside of Michigan?" *Id.* at 364:7–13 (Page ID #915).

The prosecution began with the third of these elements—§ 2251(a)'s interstate-commerce requirement, which it characterized as "not a complicated element to this offense." *Id.* at 364:14–21 (Page ID #915). The government argued that the parties' stipulation that Norwood-Charlier's Seagate hard drive was manufactured in Thailand satisfied fully § 2251(a)'s interstate-

commerce requirement. *Id.* at 364:14–25 (Page ID #915). Although the government referenced the SanDisk memory card during its closing argument—"We heard that the thumbcache images from this hard drive are where that [SanDisk] card got plugged into to produce those images on that screen."—it did not suggest that the card's origin was relevant to the jury's consideration of whether the government had satisfied § 2251(a)'s interstate-commerce element. *Id.* at 364:16–18 (Page ID #915).

Turning to Lively's "purpose," the government argued that Lively "knew that a picture" of him sexually abusing the boy "would be produced." *Id.* at 367:13–14 (Page ID #918). The images the government had introduced into evidence, the government contended, established that Lively abused the boy "for the purpose of producing a picture." *Id.* at 365:25–367:18 (Page ID #916–18).

In rebuttal, however, the prosecution hedged its interstate-commerce theory. Instead of focusing exclusively on the hard drive, it argued that "any device that the images go onto that is part of the process of producing or creating those pictures counts" towards satisfying § 2251(a)'s interstate-commerce requirement. *Id.* at 380:4–6 (Page ID #931). To that end, the prosecution urged Lively's jury to "take a look at" Norwood-Charlier's Kodak camera, and to "take a look at the [SanDisk] card, see what that says." *Id.* at 380:14–16 (Page ID #931). The government did not, however, identify the origin of the camera or the SanDisk memory card; the word "China" appears nowhere in the transcript of Lively's trial. The government added: "It's . . . not the law to say that Riley Lively had to know that these images were going to be put on [Norwood-Charlier's] computer." *Id.* at 380:18–19 (Page ID #931).

Lively's jury found him guilty. *Id.* at 392:12–16 (Page ID #943). At sentencing, the district court varied downward and sentenced Lively to the mandatory minimum: 180 months in prison. R. 88 (Sentencing Tr. at 33:1–4, 35:17–18) (Page ID #983, 985). Lively timely appealed. R. 77 (Notice of Appeal) (Page ID #475).

## II. ANALYSIS

Lively raises three challenges on appeal. First, he renews his argument that the government did not satisfy § 2251(a)'s interstate-commerce requirement, and thus that the

evidence against him was insufficient to secure his conviction. Second, Lively argues that the jury instructions understated the government's burden of proof with respect to § 2251(a)'s interstate-commerce element. Finally, Lively argues that the government's delay in indicting him violated his Fifth Amendment right to due process.

Lively's first argument is his strongest. At Lively's trial and again on appeal, the government has advanced a capacious reading of § 2251(a): a defendant violates the statute if—after he sexually abuses a minor for the purpose of creating a visual depiction of that abuse—*anyone*, *anywhere*, at *any time* actually produces *some* visual depiction of the defendant's conduct using *any* object that has travelled in interstate or foreign commerce.

The government over-reads § 2251(a), and it committed a tactical error when it relied exclusively on Norwood-Charlier's Seagate hard drive to satisfy § 2251(a)'s interstate-commerce requirement. The fact that Norwood-Charlier's hard drive was manufactured abroad—standing alone—does not satisfy § 2251(a)'s interstate-commerce requirement in this case. That is because the government introduced no evidence establishing that Lively sexually abused a minor for the *purpose* of producing the Hard-Drive Images. However, the evidence the government introduced at Lively's trial established that the images Lively *did* have the purpose of producing—the SanDisk Images—were produced using a device that had a nexus to interstate or foreign commerce: Norwood-Charlier's Chinese SanDisk card. Drawing every inference in the government's favor, we thus conclude that the government satisfied § 2251(a)'s interstate-commerce requirement.

Lively's jury-instruction and pre-indictment-delay arguments are also unavailing. We address his three arguments in turn.

## A. Lively's Rule 29 Argument

Lively's Rule 29 argument raises two issues: a statutory-interpretation question (does copying images onto a hard drive constitute "producing" under § 2251(a)?) and a standard sufficiency-of-the-evidence challenge (did the government introduce evidence sufficient to satisfy § 2251(a)'s interstate-commerce requirement?). We review both issues de novo. *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014). In addressing this second issue—whether

the evidence the government introduced at trial was sufficient to secure Lively's conviction—we do "not reweigh the evidence [or] reevaluate the credibility of witnesses." *United States v. Eaton*, 784 F.3d 298, 304 (6th Cir. 2015) (citation omitted). "Rather, our job is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (internal quotation marks and citation omitted).

Section 2251(a) reads, in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a). Section 2251(a) has two parts. The first part—everything from "Any person" through "shall be punished as provided under subsection (e)"—is written in the active voice and does not mention interstate commerce. To come within the statute's sweep, a defendant must sexually exploit a minor "for the purpose of producing any visual depiction of" that exploitation. *Id.*

Section 2251(a)'s jurisdictional requirement is in its second part—everything from "if such person knows" through "foreign commerce or mailed"—much of which is written in the passive voice. This second part contains three jurisdictional hooks, each of which is prefaced by the word "if." *See* 1 Wayne R. LaFave et al., Criminal Procedure § 1.2(c) (4th ed. 2015) (explaining that criminal statutory provisions requiring nexus with interstate commerce "have come to be described as 'jurisdictional hooks'"). The government indicted Lively under the second of these jurisdictional hooks: Lively's indictment alleged that he sexually exploited a minor "for the purpose of producing visual depictions of such conduct" and that "[s]uch visual

depictions were produced using materials that had been shipped and transported in interstate and foreign commerce . . . including but not limited to a Seagate hard drive manufactured in Thailand." R.1 (Indictment at 1–2) (Page ID #1–2).

Lively's Rule 29 argument raises two claims. First, Lively argues that an individual does not "produce" child pornography when he copies digital images onto a hard drive, and thus the government was required to prove that Norwood-Charlier's Kodak camera or its SanDisk memory card had a nexus to interstate or foreign commerce. Second, Lively argues that there is no evidence in the record establishing the origin of the Kodak camera or SanDisk memory card.

We hold that "producing" child pornography, within the meaning of § 2251(a), encompasses copying images onto a hard drive. Norwood-Charlier thus "produced" child pornography when he copied visual depictions of Lively abusing a minor onto his Seagate hard drive. That conclusion, however, does not end our analysis, because the government failed to prove that Lively abused a minor for the *purpose* of producing the Hard-Drive Images. The foreign origin of Norwood-Charlier's Seagate hard drive, standing alone, thus does not satisfy § 2251(a)'s interstate-commerce requirement in this case.

In contrast, the government established that Lively abused a minor for the purpose of producing a *different* set of visual depictions: the SanDisk Images. At Lively's trial the government introduced into evidence a device that Norwood-Charlier used to produce the SanDisk Images: the SanDisk memory card from Norwood-Charlier's Kodak camera, which card bore a trade inscription stating that it was "[m]ade in China." Although the government did not introduce the SanDisk memory card for the explicit purpose of satisfying § 2251(a)'s interstate-commerce requirement, the card was still presented in evidence before Lively's jury. Viewed in the light most favorable to the government, the evidence at Lively's trial was thus sufficient to meet § 2251(a)'s interstate-commerce element.

**1. Under § 2251(a), "producing" child pornography encompasses copying images onto a hard drive.**

We begin by addressing an issue of first impression for our circuit: under § 2251(a), does an individual "produce" child pornography when he copies "visual depictions" of child

pornography onto a hard drive that has a nexus to interstate or foreign commerce?  We join the majority of circuits to consider this question, and answer it "yes."  That means that Norwood-Charlier produced child pornography when he copied four images of Lively abusing a minor onto his Thai-made Seagate hard drive.

Section 2251's definitions section—§ 2256—defines broadly two key terms in § 2251(a): "produce" and "visual depiction."  Section 2256(3) defines "producing" as follows:  "producing, directing, manufacturing, issuing, publishing, or advertising."  We have previously recognized that § 2256(3)'s definition of "producing" is both "broad[] and non-technical[]."  *Wright*, 774 F.3d at 1091–92.  It is sufficiently broad, and sufficiently non-technical, to encompass copying images onto a hard drive.  Lively's reading of "producing"—under which an individual produces child pornography only during an initial act of production, such as taking photographs with a camera—is too narrow.

Section 2256(5)'s definition of "visual depiction" underscores our conclusion.  It provides:  "'visual depiction' includes . . . data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format."  That definition "clearly contemplates the digital storage of . . . images post-creation"—e.g., copying images onto a hard drive.  *United States v. Foley*, 740 F.3d 1079, 1086 (7th Cir. 2014).

Nearly every other circuit to consider this question agrees that an individual produces child pornography when he copies visual depictions of child pornography onto a hard drive.  The First, Second, Fourth, Fifth, Seventh, and Ninth Circuits have held that "producing" under §§ 2251, 2252, and 2252A—all of which share § 2256's definition of "producing"—encompasses copying images onto a hard drive or other digital storage device.  *See, e.g.*, *United States v. Pattee*, 820 F.3d 496, 509–11 (2d Cir. 2016); *United States v. Burdulis*, 753 F.3d 255, 258, 261–62 (1st Cir. 2014); *Foley*, 740 F.3d 1079, 1083–86; *United States v. Dickson*, 632 F.3d 186, 189–90 (5th Cir. 2011); *United States v. Caley*, 355 F. App'x 760, 761 (4th Cir. 2009); *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002).  Even the Tenth Circuit, which in the past has held that "producing" does *not* include copying images onto a digital storage

device, has retreated from that position in light of this widespread consensus. *See United States v. Schene*, 543 F.3d 627, 635–39 (10th Cir. 2008) (noting that earlier Tenth Circuit case held that "producing" did not encompass copying images onto a computer diskette, but rejecting under plain-error standard appellant's argument that government failed to satisfy § 2252A(a)(5)(B)'s jurisdictional element, because appellant stored child pornography on hard drive made in Singapore).

We find the majority view of this issue persuasive. We hold that "producing" child pornography, as used in § 2251(a), encompasses copying images onto a hard drive.

> **2. The fact that Norwood-Charlier produced child pornography when he copied images of Lively and the boy onto his Seagate hard drive does not render Lively guilty under § 2251(a).**

The government argues that our analysis can end here. It is enough, the government contends, that someone—in this case, Norwood-Charlier—produced child pornography when he copied visual depictions of Lively sexually abusing the boy onto his Thai-made Seagate hard drive. The government's reading of § 2251(a) is incorrect, because at Lively's trial the government did not establish that Lively abused the boy for the purpose of producing the Hard-Drive Images.

As it pertains to Lively, § 2251(a) reads:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if *that visual depiction* was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . .

*Id.* (emphasis added). The word "that" links the two parts of § 2251(a). As used here, "that" is an adjective. In the second part of § 2251(a), "that" modifies and restricts the noun "visual depiction," which is also used in the first part of the statute. The most natural reading of § 2251(a) is clear: "that" clarifies that the "visual depiction" in the first half of § 2251(a) is the *same* "visual depiction" the second jurisdictional hook addresses. Thus, to violate § 2251(a), a defendant must sexually exploit a minor for the purpose of producing a visual depiction of this

exploitation, and *that same visual depiction* must be produced using materials that have an interstate-commerce nexus. Any other reading of § 2251(a)'s second jurisdictional hook would fail to give effect to each word of the statute. *Cf. Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted).

This case involves two sets of visual depictions, each produced through a distinct process: the Hard-Drive Images and the SanDisk Images. "When a person loads an image onto a [hard] drive from the internet or another source, that person has created a new copy of the image in the digital memory of the . . . drive." *United States v. Burdulis*, 753 F.3d at 262; *accord Dickson*, 632 F.3d at 189; *Guagliardo*, 278 F.3d at 871. Such a person has thus *produced* a new *visual depiction* of child pornography. *Burdulis*, 753 F.3d at 262; *Dickson*, 632 F.3d at 189; *Guagliardo*, 278 F.3d at 871. Just so here: Norwood-Charlier produced the SanDisk Images when he photographed Lively abusing the boy. Norwood-Charlier produced a new set of visual depictions—the Hard-Drive Images—when he copied images of Lively abusing the boy onto his Seagate hard drive.

During oral argument before us, the government argued that the term "visual depiction," as it is used in § 2251(a), refers to "what's being captured in the image"—i.e., an event that occurred, like Lively sexually abusing a child. Oral Argument at 17:27–30, *United States v. Lively*, No. 15-1671 (6th Cir. 2016), http://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/06-16-2016 - Thursday/15-1671 USA v Riley Lively.mp3&name=15-1671 USA v Riley Lively. That interpretation is at odds with the statutory text. Section 2256(5) contemplates that "film," "videotape," and "data" can all constitute a "visual depiction" of child pornography. It does not, in contrast, provide that the term "visual depiction" refers to the *events* that film, videotape, or digital data capture.

The government's proof at trial underscores our conclusion that the SanDisk Images and the Hard-Drive Images are distinct. At Lively's trial, the government introduced into evidence *two* sets of visual depictions. Law enforcement recovered Government Exhibits 12a, 13a, 14a, and 15a (the SanDisk Images) from Norwood-Charlier's SanDisk memory card. By reviewing these images' metadata, Sharp (the forensic examiner) could tell that these four images "came

from" the same Kodak digital camera Norwood-Charlier used to photograph Lively and the boy. R. 87 (Trial Tr. (Sharp) at 265:9–18) (Page ID #816).  Government Exhibits 12, 13, 14, and 15 (the Hard-Drive Images) depicted the same conduct as the SanDisk Images, but they were four *different* visual depictions of Lively sexually abusing the boy.  The FBI recovered these images from the thumbnail cache of Norwood-Charlier's Seagate hard drive.  They were *copies* of the images Norwood-Charlier took using his Kodak camera—they were different digital data found on a different medium.  And they were produced through a distinct process:  as the prosecution argued to Lively's jury during its closing argument, "the thumbcache images from th[e] hard drive are where that [SanDisk] card got plugged into to *produce* those images."  R. 87 (Trial Tr. at 364:16–18) (Page ID #915) (emphasis added).

Moreover, in its brief, the government concedes that there were two productions and two sets of visual depictions in this case.  The government writes:  "[T]he logical next step for any photograph *produced on a digital camera* is for the camera to be connected to a computer, as that is the only way that digital images *can be produced from* such a camera."  Gov't Br. at 28 (emphasis added).  This statement is not necessarily correct:  Norwood-Charlier's camera had a built-in screen, so Lively could have viewed images that Norwood-Charlier took with the camera without first transferring those images to a computer.  6th Cir. R. 25-2 (Exs. to Gov't Letter Regarding Trial Exhibit).  In any event, the government has endorsed a common-sense understanding of the timeline of productions in this case:  Norwood-Charlier produced the SanDisk Images when he photographed Lively abusing the boy, and later produced the Hard-Drive Images when he copied those images onto his Seagate hard drive.

At Lively's trial, the government established that Lively abused the boy for the purpose of producing one—and only one—of the two sets of visual depictions in this case:  the SanDisk Images.  Lively traveled to Michigan and sexually abused the boy while Norwood-Charlier took four digital photographs of that incident with his Kodak camera; it is clear that Lively sexually exploited the boy for the purpose of producing the SanDisk Images.  Apart from one stray comment in its rebuttal to Lively's closing argument, however, the government never argued that the SanDisk Images were produced using materials that had been transmitted in interstate or foreign commerce.

In contrast, the government proved that the Hard-Drive Images were produced using materials manufactured abroad, but never argued that Lively abused the boy for the purpose of producing the Hard-Drive Images.  If anything, the government's evidence at trial suggests that Lively lacked this purpose.  Norwood-Charlier lived in Michigan, and Lively lived in California.  Norwood-Charlier invited Lively to visit him for a weekend in April 2009 so that he could photograph Lively sexually abusing a child.  Lively complied.  Sometime thereafter—perhaps before Lively left, perhaps after—Norwood-Charlier produced the Hard-Drive Images when he copied four images of Lively and the boy from his SanDisk memory card onto his Seagate hard drive.  There is no evidence that Lively knew Norwood-Charlier planned to produce the Hard-Drive Images.  There is no evidence that Lively knew Norwood-Charlier even *owned* the Seagate hard drive.  Nor did the government introduce any evidence suggesting that Lively wanted Norwood-Charlier to send him—via e-mail or otherwise—images of Lively abusing the boy.

Put simply, there is no evidence in the record suggesting that, when Lively sexually abused the boy, he did so for the purpose of producing the Hard-Drive Images.  Norwood-Charlier's Seagate hard drive thus does not establish the necessary interstate-commerce link in this case.

The government attempts to counter this conclusion in two ways, but both are unavailing.  The government notes that a defendant need not actually produce a visual depiction of child pornography in order to violate § 2251(a).  This is correct, but inapposite.  Section 2251(a)'s second jurisdictional hook employs the passive voice ("if that visual depiction *was produced*"), and thus "reflects 'agnosticism . . . about who does the'" producing.  *Dean v. United States*, 556 U.S. 568, 572 (2009) (citing *Watson v. United States*, 552 U.S. 74, 81 (2007)).  To be clear, when the government prosecutes a defendant under § 2251(a)'s second jurisdictional hook, it is *not* required to prove that the *defendant* actually produced child pornography.  *See United States v. Terrell*, 700 F.3d 755, 760–61 (5th Cir. 2012).  This conclusion, however, is non-responsive to the narrow issue we consider here.  The government's hurdle is that there is no reason to believe that Lively had the *purpose* of producing—or having Norwood-Charlier produce—the Hard-Drive Images.

Second, the government argues that it was not required to prove that Lively knew of the interstate or foreign nature of the materials that Norwood-Charlier used to produce child pornography. That is also correct. *See, e.g.*, *United States v. Warner*, 614 F. App'x 575, 577 (3d Cir. 2015); *United States v. Sheldon*, 755 F.3d 1047, 1049 (9th Cir. 2014); *Terrell*, 700 F.3d at 759; *United States v. Smith*, 459 F.3d 1276, 1289 (11th Cir. 2006). Nonetheless, it does not help the government's cause. Our focus is on Lively's *purpose*—on the visual depictions Lively had the *purpose of producing* when he abused a minor. It is of no moment whether Lively knew that the Kodak camera, or the SanDisk memory card, or the Seagate hard drive, were manufactured outside of Michigan.

The district court also adopted an erroneous reading of § 2251(a) when it denied Lively's Rule 29 motion. In ruling that the government had satisfied § 2251(a)'s interstate-commerce requirement, the district court stated that there was no "requirement that the interstate commerce nexus be satisfied with respect to the original item that created the image. *Every subsequent publication* of the image counts." R. 87 (Trial Tr. at 336:3–7) (Page ID #887) (emphasis added). The government's reading of § 2251(a) rests on a similar premise: if "every *subsequent* publication of" a visual depiction of child pornography "counts," then the fact that Norwood-Charlier copied images of Lively abusing the boy onto his Thai-made Seagate hard drive would mean that Lively violated § 2251(a), even if Lively did not abuse the boy for the purpose of producing the Hard-Drive Images.

This interpretation is incorrect. The district court's statement that "[e]very subsequent production" of child pornography may be used to satisfy § 2251(a)'s second jurisdictional hook finds no support in the statute. Under that reading of § 2251(a), the government meets the second hook's interstate-commerce element "if *a* visual depiction was *subsequently* produced using materials that have" a nexus to interstate or foreign commerce. Adopting that reading not only would require us to change words in § 2251(a), but also would require us to add words to the statute. Moreover, the district court's reading of § 2251(a) ignores the clear, limiting language in § 2251(a)'s text ("if *that visual depiction*"), and renders irrelevant a defendant's "purpose" under the statute.

In sum, the fact that Norwood-Charlier produced child pornography when he produced the Hard-Drive Images does not mean that Lively is guilty under § 2251(a), because Lively did not abuse the boy for the purpose of producing the Hard-Drive Images.

### 3. The government satisfied § 2251(a)'s interstate-commerce requirement in this case, because Norwood-Charlier's SanDisk memory card was manufactured in China.

Our rejection of the government's theory of this case—that Norwood-Charlier's Thai-made hard drive established § 2251(a)'s interstate-commerce requirement—does not end our inquiry. Our task in reviewing Lively's sufficiency-of-the-evidence challenge is to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). That narrows the final question we must answer to determine whether the government satisfied § 2251(a)'s jurisdictional element: was there *any other evidence* in the record, apart from the Seagate hard drive, with which the government could have satisfied § 2251(a)'s interstate-commerce requirement? We answer that question: "yes." And our explanation is simple: Norwood-Charlier's SanDisk memory card bore a trade inscription stating, "Made in China."

At Lively's trial, the government introduced into evidence Norwood-Charlier's Kodak camera and SanDisk memory card as one exhibit: Government Exhibit 11. The government did not introduce Government Exhibit 11 in order to satisfy § 2251(a)'s interstate-commerce requirement. However, the district court did not instruct Lively's jury that it could consider the SanDisk memory card only for a limited purpose; Government Exhibit 11 was admitted as a full exhibit. The jury handled Government Exhibit 11; Lively's jurors held the SanDisk memory card. Moreover, Lively's jury saw an image of the SanDisk memory card magnified on a projector. The SanDisk memory card, and its "Made in China" trade inscription, were on full display at Lively's trial. Lively's argument that there is nothing in the record that verifies that the SanDisk memory card bears a "Made in China" trade inscription is incorrect.

What follows is straightforward: the government satisfied § 2251(a)'s jurisdictional requirement. Lively sexually abused the boy for the purpose of producing the SanDisk Images,

which Norwood-Charlier produced when he photographed Lively and the boy with his Kodak digital camera.  The camera held the SanDisk card—indeed, the FBI recovered the SanDisk Images from the card.  That means that these four visual depictions were produced using materials that had a nexus to interstate or foreign commerce.  Lively is thus guilty under § 2251(a).

Does it matter that the government did not introduce the SanDisk memory card in order to satisfy § 2251(a)'s interstate-commerce requirement?  We are confident that the answer is "no."  When reviewing the district court's denial of a judgment of acquittal, our task is to "consider *all* of the evidence admitted by the trial court," even evidence that "was admitted erroneously."  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (emphasis added) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)).  The SanDisk memory card was put into evidence before Lively's jury, and the district court did not provide a limiting instruction when it admitted the memory card into evidence.  Although the government may not have *intended* Lively's jury to connect the dots and recognize that the SanDisk memory card had a nexus to interstate or foreign commerce, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  *Cavazos*, 132 S. Ct. at 3–4; *see United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) ("We do not insert our own findings of fact; rather we give full credit to the responsibility of the jury to weigh the evidence, to make credibility determinations, and to draw inferences.").  Viewing the evidence at trial in the light most favorable to the government, we conclude that the government satisfied § 2251(a)'s interstate-commerce requirement because the SanDisk memory card bore a "Made in China" trade inscription.

## B.  Jury Instructions

"We review a district court's decisions concerning whether to give a particular jury instruction for abuse of discretion."  *United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013) (quoting *United States v. Sloan*, 401 F. App'x 66, 68 (6th Cir. 2010)).  "An abuse of discretion will not be found if the jury instructions as a whole . . . adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Id.* (quoting *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010)).

Lively argues that his jury instructions on interstate commerce were too narrow. The district court, Lively contends, should have instructed his jury that in order to convict Lively of violating § 2251(a), it would have to find that Norwood-Charlier's Kodak camera or SanDisk memory card had a nexus to interstate or foreign commerce.

The district court's jury instructions were not erroneous—it is Lively's interstate-commerce theory that is too narrow. As we explained *supra*, an individual "produces" child pornography when he photographs an act of child sexual abuse, *and* when he copies images onto a digital storage device such as a hard drive. The district court's jury instructions reflected this broad definition of "producing" under § 2251(a). The district court instructed Lively's jury that in order to convict Lively, it would have to determine that the prosecution had proven two elements beyond a reasonable doubt:

[1.] First, that the defendant used, persuaded, induced, or enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

[2.] And second, that the visual depiction was produced using materials that had been shipped or transported in interstate or foreign commerce.

R. 87 (Trial Tr. at 355:16–21) (Page ID #906). Those instructions were not "confusing, misleading, [or] prejudicial." *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) (citation omitted). To the contrary, the instructions stated accurately § 2251(a)'s elements, including its interstate-commerce requirement. Importantly, those instructions did not preclude Lively's jury from relying on the SanDisk memory card's origin in assessing whether the government satisfied § 2251(a)'s interstate-commerce element. The district court did not err—much less abuse its discretion—in instructing Lively's jury.

## C. Pre-Indictment Delay

Our cases delineating the proper standard of review for a district court's denial of a motion to dismiss for pre-indictment delay are inconsistent. *Compare United States v. Szilvagyi*, 417 F. App'x 472, 479 (6th Cir. 2011) ("We review 'the denial of a motion to dismiss based upon preindictment delay for an abuse of discretion and the related questions of fact for clear error.'" (quoting *United States v. McDougle*, 82 F. App'x 153, 158 (6th Cir. 2003)), *and United*

*States v. Scott*, 579 F.2d 1013, 1013–14 (6th Cir. 1978) (Mem.) (same), *with United States v. Vaughn*, 444 F. App'x 875, 878 (6th Cir. 2011) ("In reviewing a motion to dismiss an indictment, we review the district court's legal conclusions de novo and its findings of fact for clear error or abuse of discretion. . . . We review the determination of pre-indictment delay de novo because it raises a mixed question of law and fact." (internal quotation marks and citations omitted)), *and United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007) ("Brown first contends that the three-year delay between the crime and his arrest violated his due-process rights. We review de novo this claim, which raises a mixed question of law and fact.")

Lively's pre-indictment-delay claim fails even under de novo review. However, for the sake of clarity, we think the most appropriate way to review Lively's claim of pre-indictment delay is to answer two questions, applying a different standard of review to each:

1. Did the government's delay in indicting Lively violate his Fifth Amendment right to due process? We review de novo this "mixed question of law and fact." *Brown*, 498 F.3d at 527.

2. On what factual findings did the district court rely in rejecting Lively's motion to dismiss for pre-indictment delay? We review for clear error the district court's factual findings. *Szilvagyi*, 417 F. App'x at 479.

Lively argues that the four-year delay between Norwood-Charlier's arrest and Lively's indictment violated Lively's Fifth Amendment right to due process, because it inhibited Lively from raising an effective insanity defense. Because that argument is overly speculative and rests on a misreading of this circuit's caselaw, the district court properly denied Lively's motion to dismiss for pre-indictment delay.

"[A] successful Due Process claim for pre-indictment delay requires that a defendant establish" two elements: "(1) prejudice to his right to a fair trial, and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007) (quoting *United States v. Wright,* 343 F.3d 849, 859 (6th Cir. 2003)). To satisfy the first, "prejudice" prong, a defendant must "show[] *substantial* prejudice to his right to a fair trial." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009)

(emphasis added) (quoting *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)). As relevant here, in evaluating whether a defendant has satisfied the second "intentional-delay" prong, "[i]t is well-established that a delay resulting from investigative efforts 'does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time.'" *United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997) (quoting *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986)). Both elements are difficult to establish, and a defendant who moves to have his indictment dismissed for pre-indictment delay faces an uphill battle. *Id.* at 477 n.10 ("[T]he standard for pre-indictment delay is nearly insurmountable . . . .").

Lively cannot satisfy either prong of this circuit's test for establishing unconstitutional pre-indictment delay. First, Lively's claim that the government's delay prejudiced his right to a fair trial is speculative. The evidence Lively introduced in support of that claim—a 2014 letter from a forensic psychiatrist who opined that he could not conclusively determine whether Lively was insane when he sexually abused the boy—falls far short of demonstrating that Lively could have raised a tenable insanity defense if he had been indicted sooner. R. 22-1 (Br. in Support of Mot. to Dismiss Due to Pre-Indictment Delay, Ex. 1) (Page ID #69).

Nor can Lively satisfy the second part of this circuit's test for evaluating pre-indictment delay: even Lively admits that the government's delay in indicting him was, at worst, simply negligent. Lively Br. at 43–44. Lively did not allege below, and does not claim now, that the government *intentionally* delayed indicting Lively. The government's prosecution of Lively spanned multiple jurisdictions and included at least three targets: Lively, Norwood-Charlier, and Quackenbush. Most importantly, nothing in the record suggests that the government delayed indicting Lively in order to gain an upper hand.

Lively argues that we (or this court sitting en banc) should adopt a new standard for evaluating whether pre-indictment delay has prejudiced a defendant: "This Court should adopt a standard that allows a defendant to show actual and substantial prejudice accompanied by prosecutorial negligence to prove a due process violation." Lively Br. at 43. We see no reason to question our two-prong test for evaluating claims of pre-indictment delay, under which Lively loses. Moreover, we are bound by our published decisions. *See, e.g., United States v. Marrero*, 651 F.3d 453, 475 (6th Cir. 2011).

In sum, the district court properly dismissed Lively's motion to dismiss his indictment for pre-indictment delay.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Lively's conviction.

---

### CONCURRING IN PART AND IN THE JUDGMENT

---

BERNICE BOUIE DONALD, concurring. I agree with the majority's decision to uphold the conviction based on the memory card and so concur in the judgment. However, I respectfully disagree with the majority's conclusion that the Thai hard drive does not support a conviction.

Importantly, a person is liable if the visual depiction of sexual abuse is "*transmitted* using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer…" 18 U.S.C. § 2251(a) (emphasis added). In its brief, the government asserted—and Lively did not refute—that Norwood-Charlier (the owner of the hard drive) shared videos of sexual acts involving children with Lively and Quackenbush. Appellee Br. 4–5. It would have been eminently reasonable for the jury to conclude that the videos of Lively abusing the child that led to his conviction were among the material shared.

Assuming that Norwood-Charlier ever viewed the image on his computer screen or shared it, that image was "transmitted" using the Thai hard drive in two ways. First, in order to view an image on a computer screen that is stored on a hard drive, the hard drive must transmit the stored image through a video or graphics adapter and then through a cable that connects to the monitor. *See* http://www.technologyuk.net/computing/computer-systems/display-adapter.shtml. Merriam-Webster Online's definition for transmit is "to send or convey from one person or place to another." http://www.merriam-webster.com/dictionary/transmit. We could then say that the hard drive was used to convey the picture taken from the camera (one place) to the computer screen (a second place). Second, if Norwood-Charlier ever sent out a video of Lively abusing the minor with his computer, it follows that he would have used the hard drive to work in conjunction with his computer's other components to transmit the video through the internet.

Therefore, the Thai hard drive could support a conviction. For that reason, I cannot join the portion of the majority opinion holding otherwise.