UNITED STATES of America,
Plaintiff-Appellee,

v.

Bernard J. FARBER, Defendant-
Appellant.

No. 15680.

United States Court of Appeals
Sixth Circuit.

Sept. 25, 1964.

———◆———

Morton Rabkin (Court Appointed), Cincinnati, Ohio, for appellant.

Milton J. Trumbauer, Detroit, Mich., Lawrence Gubow, U. S. Atty., James Francis Finn, Asst. U. S. Atty., Detroit, Mich., on brief, for appellee.

Before WEICK, Chief Judge, and CECIL and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

Bernard J. ("Bernie") Farber was convicted of violating the White Slave Traffic Act, 18 U.S.C. § 2421, and sen-

tenced to four years in prison. The jury found him guilty of knowingly procuring transportation for, and knowingly causing to be transported in interstate commerce, from Detroit, Michigan, to Lima, Ohio, a woman for purposes of prostitution. A verdict of not guilty was returned on the second count of the indictment, charging transportation of the same woman from Lima to Detroit.

Two questions are presented on this appeal: (1) The sufficiency of the evidence to sustain the verdict; and (2) Whether the District Court committed prejudicial error in admitting testimony which defendant contends was hearsay, which was later stricken by the trial judge with specific instructions that it be disregarded by the jury.

### The Sufficiency of the Evidence

The woman in question testified that in October 1958, as an eighteen-year-old married girl separated from her husband, she came from her home in Flint, Michigan, to Detroit, where she met defendant; that defendant approached her several times concerning engaging in prostitution and, after first rejecting the proposal, she consented to engage in such acts; that for a period of time she lived with defendant, ostensibly as husband and wife; that defendant instructed her as to how to engage in prostitution and how to examine people for venereal disease; that she lived in an apartment, did not pay her own rent, and defendant arranged her prostitution dates for her; and that she collected from her dates and turned over to defendant approximately $1,000 per week from her activities in Detroit, receiving from him money for clothing.

As for her transportation in interstate commerce, this woman testified that in December 1958 defendant arranged for her to go to Lima, Ohio, accompanied her to the bus station, purchased her bus ticket, and told her that she would be met in Lima by a man named "Bob"; that she had never been to Lima before and did not know anybody there; that it was not her "idea to go to Lima," and that she made the trip at the instance of defendant; that she engaged in prostitution in Lima until after the Christmas holidays at a tavern known as Willow Inn, owned by a Mr. and Mrs. Robert Burden, both of whom testified as government witnesses at the trial; that she had no previous acquaintance with the Burdens, and that defendant gave her their names before she left Detroit; that Burden came to the bus station in Lima and drove her in his automobile to the tavern; that she worked as a waitress and carried on prostitution activities in a bedroom or cabin connected with the bar; that defendant came to see her while she was in Lima and she paid over money to him while he was there in an unspecified amount, but less than $1,000 per week; and that on or shortly after New Year's Day she returned to Detroit by bus, on her own volition, paying her own bus fare.

Mr. and Mrs. Burden testified that this woman came to their tavern, that Mr. Burden met her at the bus station, that she paid $5.00 to Mrs. Burden each time she used the bedroom or cabin adjoining the bar, and that defendant visited her while she was in Lima. They denied the woman's testimony that she split her collections with them on a 60–40 basis, she retaining 60 per cent and paying them 40 per cent.

Defendant contends that there was not sufficient evidence for the jury to find that he had the intent to transport this woman to Lima for the purpose of engaging in prostitution. He asserts that he exercised no control over her, as demonstrated by the fact that she left Lima and returned to Detroit on her own volition.

The intent required to be proved under 18 U.S.C. § 2421, "is an intent that the female transported by the accused in interstate commerce shall, after such transportation, engage in the charged immoral conduct." Baker v. United

States, 310 F.2d 924, 931 (C.A. 9), cert. denied 372 U.S. 954, 83 S.Ct. 952, 9 L.Ed. 2d 978; Dunn v. United States, 190 F.2d 496, 497 (C.A. 10). It is well recognized that this intent may be shown by circumstantial evidence. Hardie v. United States, 208 F.2d 694 (C.A. 5).

■ The offense is complete under this statute when it is shown that the defendant knowingly induced the interstate transportation and that the victim .crossed a state boundary. "However, this is true only where it is shown also that the defendant had the requisite intent and purpose that the victim 'give herself up to the practices of prostitution, or * * * give herself up to debauchery, or any other immoral practice'." United States v. Austrew, 202 F.Supp. 816, 823 (D.Md.), aff'd 317 F.2d 926 (C.A. 4); Guffey v. United States, 310 F.2d 753, 754 (C.A. 10). In Austrew, supra, the court states that intent may be inferred from the character of the environment and the subsequent conduct of the parties: "Typically, then, triers of fact must make reasonable inferences from the conduct of the party in question and the surrounding circumstances." 202 F. Supp. 816, 824. Where the intent of the accused is an ingredient of the crime charged, its existence is a question of fact for the jury. Stewart v. United States, 311 F.2d 109, 112 (C.A. 9); Baker v. United States, supra.

We find Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331, relied upon by defendant, to be readily distinguishable from the instant case on its facts.

■ The trial judge instructed the jury adequately and at length as to the elements of "intent." We hold that there is sufficient evidence on the record to support a finding by the jury that defendant arranged for the woman to travel by bus from Detroit to Lima, escorted her to the bus station, and paid her bus fare, with the intent that she engage in prostitution in Lima.

## The Hearsay Question

Robert Burden testified that in December 1958 he received a telephone call from Detroit from a person who identified himself as "Bernie," and that he was not personally acquainted with anybody by the name of Bernie at that time. In response to a question as to whether or not there was any reference in this telephone conversation to a mutual acquaintance, Burden testified as to an earlier conversation he had in his tavern with one Phil Hardy, who told him that he, Hardy, had a friend named Bernie living in Detroit.

Defendant objected to this testimony as hearsay. The trial judge overruled the objection, but later, after the conclusion of defendant's proof, struck this evidence from the record and explicitly instructed the jury to disregard it.

■ It is contended by the government that, since the witness already had testified that he received a call from a man who identified himself as "Bernie," the testimony of the witness that he had discussed a "Bernie" with one Phil Hardy was not objectionable as hearsay testimony, because it was not admitted to establish the truth of the matter stated, but merely to show the state of mind of the witness; that is, that in the mind of the witness the name "Bernie" was not unknown, and to show the impact the name "Bernie" had upon him when he received a telephone call from Detroit from a person with this name.

It is doubtful whether the challenged testimony would be inadmissible as hearsay for the purpose for which it was offered.[1] Defendant contends that the purpose of the challenged testimony was to prove that prior arrangements had been made by him with Burden. We do not find it necessary to pass upon the issue of the admissibility of this testimony, since the challenged portions

1. See Wigmore, Evidence, §§ 1766, 1789 (3d ed. 1940); Morgan, Basic Problems of Evidence, 249 (1963); McCormick, Evidence, § 228 (1954).

thereafter were stricken by the trial judge by clear instructions to the jury.[2]

"The general rule is that where evidence is erroneously admitted the subsequent striking of it from the case, accompanied by a clear and positive instruction to the jury to disregard the evidence, cures the error. But if the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted." Dolan v. United States, 218 F.2d 454, 460 (C.A. 8), cert. denied 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255, and cases therein cited; Fahning v. United States, 299 F.2d 579, 581 (C.A. 5); Davis v. United States, 229 F.2d 181, 186 (C.A. 8), cert. denied 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441.

Applying the test of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, we hold that the evidence here challenged is not of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury could not remove whatever harmful effect may have been caused by its admission.

We hold that there was other sufficient competent evidence from which the jury, while disregarding altogether the excluded testimony, could conclude that defendant caused his victim to be transported from Detroit to Lima for the purpose of engaging in prostitution, and that he made advance arrangements with Mr. or Mrs. Burden for that purpose.

Affirmed.

2. The following instruction on this point was given by the District Judge:

"There has been offered in this case some testimony as to a telephone conversation of the witness Robert Burden with an unidentified person and also testimony as to his alleged conversation with one Phillip Hardy regarding one who has been identified only as 'Bernie.' The Court allowed this testimony as introductory to connecting it up with the defendant. Since, however, this testimony has not been positively so connected, the Court has ordered that portion of Robert Burden's testimony to be stricken; this is that portion which relates to the telephone conversation with an unidentified person, and that testimony with regard to his conversation with Phillip Hardy regarding one Bernie. So the Court now instructs you to disregard completely that portion of the testimony of the witness Robert Burden and to strike it from your minds completely and to consider the guilt or innocence of the defendant only from the remaining testimony of the witnesses in this case on each of the counts."