RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARK ALAN DEAKINS,

*Defendant-Appellant*.

No. 24-5223

─────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:21-cr-00058-1—Charles Edward Atchley Jr., District Judge.

Argued:  May 7, 2025

Decided and Filed:  September 10, 2025

Before:  THAPAR, BUSH, and LARSEN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Howard W. Anderson III, TRULUCK THOMASON LLC, Greenville, South Carolina, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Howard W. Anderson III, TRULUCK THOMASON LLC, Greenville, South Carolina, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────

## OPINION

─────────────

LARSEN, Circuit Judge.  Between 1994 and 2018, Mark Deakins sexually abused three boys.  In 2022, he was indicted on five counts relating to that abuse.  He was subsequently convicted via bench trial on all charges and sentenced to life plus ten years' imprisonment.

He appeals both the conviction and his sentence, raising a variety of challenges. For the following reasons, we AFFIRM.

I.

Deakins sexually abused three boys: C.C., B.A., and J.G. He first abused C.C. starting in 1994. C.C., who lived near Deakins, was eleven years old when the abuse began. The abuse continued for years. In 1999, Deakins and C.C. traveled together from Tennessee to Florida, where they stayed for several months. The abuse continued during the trip, and Deakins filmed some of it.

Deakins's next victim was B.A. That abuse occurred around 2005–06. B.A., then approximately eleven years old, lived next door to a house where Deakins was doing construction work. The abuse began when B.A. began helping Deakins with the project, and Deakins secretly filmed some of it.

Most recently, Deakins abused J.G. After J.G.'s father figure passed away in 2017, the seven-year-old began spending time with Deakins, who lived across the street. Deakins took several sexually explicit photos and videos of J.G.

In 2021, the FBI recovered seven thumb drives from local police. Those thumb drives were recovered alongside Deakins's driver's license and his sex-offender registration card; they contained "thousands of images" of child pornography, including images and videos of C.C., B.A., and J.G. R. 140, Trial Tr., PageID 1634, 1636.

A federal grand jury indicted Deakins on five counts: transportation of an individual to engage in criminal sexual activity, 18 U.S.C. § 2421 (Count One); exploitation of a child, 18 U.S.C. § 2251(a) (Counts Two and Three); possession of child pornography, 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2) (Count Four); and committing sexual exploitation of a child while a registered sex offender, 18 U.S.C. § 2260A (Count Five).

Deakins filed a pretrial motion to dismiss the first three counts. He argued that Count One was time barred and that the indictment failed to sufficiently charge the first three counts. The district court denied his motion to dismiss. After Deakins waived his right to a jury trial, the

court convicted him on all charges and sentenced him to life plus ten years' imprisonment. Deakins timely appealed.

## II.

Deakins raises four arguments on appeal: (1) that Count One was time barred; (2) that the indictment failed to sufficiently charge the first three counts; (3) that the evidence at trial was insufficient to sustain a conviction on all five counts; and (4) that the district court erred by applying a sentencing enhancement based on Deakins's prior Tennessee convictions. We address each argument in turn.

### A.

Count One charged Deakins with violating 18 U.S.C. § 2421. That statute prohibits the knowing transportation of "any individual in interstate or foreign commerce . . . with intent that such individual engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421 (1998). Deakins argues that Count One is barred by 18 U.S.C. § 3282(a), which imposes a five-year default statute of limitations on non-capital federal crimes. If § 3282(a) applied, it would bar Count One because more than five years lapsed between 1999, when Deakins transported C.C. across state lines, and his indictment in 2022. The government argues that a neighboring statute of limitations—§ 3283—governs instead. Section 3283 displaces § 3282(a)'s five-year default when the offense is one "involving the sexual or physical abuse, or kidnaping, of a child under the age of 18."[1] 18 U.S.C. § 3283 (2006). Section 3283 permits prosecutions "during the life of the child, or for ten years after the

---

[1]When Deakins committed the § 2421 offense alleged in Count One of the indictment, a prior iteration of § 3283 was in place. That version allowed "prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years . . . before the child reaches the age of 25." 18 U.S.C. § 3283 (1999). However, in 2003, five years before C.C. turned twenty-five, Congress amended § 3283 to allow for prosecutions involving child sexual abuse "during the life of the child." Pub. L. No. 108-21, § 202, 117 Stat. 660 (2003). Three years later, Congress amended § 3283 again to allow for prosecutions "during the life of the child, or for ten years after the offense, whichever is longer." Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1182(c), 119 Stat. 2960, 3126 (2006). That same year, the Adam Walsh Child Protection and Safety Act of 2006 removed the statute of limitations altogether for "any felony under chapter . . . 117"—the chapter that contains § 2421. *See* 18 U.S.C. § 3299. "[T]he extension of a limitations period before that period has run does not violate the Ex Post Facto Clause." *United States v. Knipp*, 963 F.2d 839, 844 (6th Cir. 1992). So, the operative question is whether § 3283, and its various amendments, apply instead of the five-year default limitations period.

offense, whichever is longer." *Id.* The district court deemed § 3283 the applicable time limit and held that the prosecution was timely. Reviewing that determination de novo, we agree. *See United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021).

Deakins's argument in favor of § 3282(a)'s five-year time limit rests on the assertion that, to determine which time limit controls, we must apply something akin to the "categorical approach," which we normally apply to determine whether a defendant's criminal history triggers sentencing enhancements or deportation. *See Taylor v. United States*, 495 U.S. 575 (1990); *Moncrieffe v. Holder*, 569 U.S. 184 (2013). That approach directs us to ignore the defendant's real-world conduct and instead focus our attention exclusively on the elements of a prior conviction. *See Mathis v. United States*, 579 U.S. 500, 504 (2016). Deakins argues that applying a categorical approach here would render Count One untimely because securing a conviction under § 2421 does not always require that sexual abuse occur. We disagree.

Under § 2421, criminal liability attaches upon the transportation of "any individual" with the intent that the transportee engage in prostitution or some other criminal sexual activity. 18 U.S.C. § 2421 (1998). Section 3283 displaces the default five-year time limit only for offenses "involving the sexual . . . abuse" of minors. In the district court, Deakins argued that § 3283 is "categorically" inapplicable to prosecutions under § 2421. R. 90, Motion to Dismiss Memorandum, PageID 530. Deakins reasoned that "[b]ecause the gravamen of the crime is the crossing of state lines, 'sexual . . . abuse' within the meaning of § 3283 is not an element that need be proven at trial at all." *Id.* That overbreadth, Deakins said, means that § 3282(a)'s five-year time limit governs instead of § 3283's much longer one. Deakins repeats that argument here.[2]

---

[2] In his opening brief on appeal, Deakins, in one sentence, alludes to a second way in which § 2421 might be a categorical "mismatch" for § 3283: "the crime does not even require a minor at all—just that an 'individual' be transported." Appellant Br. at 19–20 (citation omitted). This argument is forfeited twice over. First, a one-line claim without further elaboration is insufficient to preserve an argument for appeal. *United States v. Simpson*, 138 F.4th 438, 454 (6th Cir. 2025). What's more, Deakins forfeited this claim by failing to raise it in the district court. Indeed, in the district court, Deakins took precisely the opposite position regarding what the statute required. There, he argued that the evidence was insufficient to convict him because "§ 2241 [sic] is a specific-intent crime" and he could not have "'knowingly transported a *minor*, (C.C.)' if he thought C.C. were an adult." R. 144, Proposed Findings and Conclusions, PageID 1750–51 (emphasis added) (citation omitted). At best, then, plain-error review

Deakins's principal support comes from *United States v. Noveck*, 271 U.S. 201 (1926). There, the Court was asked to determine which of two statutes of limitations applied. The United States had charged Noveck with perjury for lying under oath about his taxes. *Id.* at 202. Noveck argued that the three-year default statute of limitations for non-capital crimes applied. *Id.* at 202–03. The United States countered that a six-year statute of limitations for "offenses *involving* the defrauding or attempts to defraud the United States" applied instead. *Id.* (emphasis added). Defrauding the United States was not an element of perjury, but the indictment specifically alleged that Noveck had committed perjury for the purpose of defrauding the United States. *Id.* at 203; Transcript of Record at 1–4, *United States v. Noveck*, 271 U.S. 201 (1926) (providing indictment).

The Court concluded that the three-year time limit applied. The Court reasoned that Noveck's offense was not one "involving the defrauding or attempts to defraud the United States" because "the alleged purpose to defraud the United States [was] not an element of the crime . . . on which the indictment [was] based." *Id.* at 203. The fact that Noveck's real-world conduct *actually involved* defrauding the United States did not matter. Noveck's alleged purpose "d[id] not affect the charge," so it could "be rejected as mere surplusage." *Id.*

We know of no case in the last three-quarters of a century in which the Court has applied something like a "categorical approach" to determine the correct statute of limitations.[3] *See Weingarten v. United States*, 865 F.3d 48, 59 (2d Cir. 2017) (noting the lack of "recent case law for the proposition that the categorical approach applies outside the post-conviction context."). And, in modern contexts where the categorical approach does generally apply, courts have often looked for Congress's use of "element specific" language to determine whether the approach should apply to particular statutes. *See, e.g.*, *Taylor*, 495 U.S. at 600–01; *United States v. Dodge*, 597 F.3d 1347, 1353–54 (11th Cir. 2010); *United States v. Mi Kyung Byun*, 539 F.3d

---

applies to this claim. And the absence of controlling precedent here forecloses the argument that any error was "plain." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

[3]Deakins relies only on *Noveck*. But a few other Supreme Court opinions from the same era, all involving fraud, apply similar, though not identical, reasoning. *See United States v. Scharton*, 285 U.S. 518, 521–22 (1932); *Bridges v. United States*, 346 U.S. 209, 221–22 (1953); *United States v. Grainger*, 346 U.S. 235, 242 (1953) (issued the same day as *Bridges*).

982, 991–92 (9th Cir. 2008). No element-specific language appears in § 3283. What's more, the Court's modern turn to the categorical approach was motivated, at least in part, by Sixth Amendment concerns and the "practical difficulties" of characterizing past convictions, neither of which applies here. *Weingarten*, 865 F.3d at 59–60 (citation omitted). So, there is reason to doubt that a categorical approach applies in this context, which involves an entirely different statutory scheme than the one at issue in *Noveck*. *See id.* at 58–59; *United States v. Schneider*, 801 F.3d 186, 196 (3d Cir. 2015).

But even assuming that *Noveck's* approach applies, Deakins's claim cannot succeed. The Court in *Noveck* held that the fact that the indictment alleged that Noveck had committed perjury with a "purpose of defrauding the United States" did not make Noveck's perjury offense one "*involving* the defrauding or attempts to defraud the United States." 271 U.S. at 202–03 (emphasis added). That was because the charged perjury offense did not require proof of a purpose to defraud. *Id.* at 203. Here, however, an intent to sexually abuse was an essential "ingredient" of the offense charged. *Id.* at 204.

Section 2421 criminalizes transporting an individual "with intent" that the transportee engage either in prostitution or other criminal sexual conduct—specifically, "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421 (1998). To the extent that a categorical approach applies, § 2421's bifurcated structure makes it akin to a "divisible" statute. *See Mathis*, 579 U.S. at 505–06. And when faced with such statutes, the court is free to look to the indictment to see which act was charged. *Id*. When, as here, the § 2421 charge does not involve prostitution, the government must prove that the defendant intended the victim to commit *illegal* sexual activity. Otherwise, the intended sexual activity would not be activity "for which any person can be charged with a criminal offense." 18 U.S.C. § 2421 (1998).

It follows that the defendant's intent that the victim engage in illegal "sexual activity" here is nothing like the "purpose of defrauding the United States" alleged in *Noveck*. Under § 2421, the defendant's intent regarding the victim's illegal sexual activity is not "mere surplusage" that "did not affect the charge." *Noveck*, 271 U.S. at 203. Rather, it is an essential "ingredient" of the mens-rea element of the offense. *Id.* at 204.

The only remaining question, then, is whether there is substantial incongruity between illegal "sexual activity," as that term is used in § 2421, and "sexual abuse," as that term is used in § 3283. That is, can one transport a child with intent that the transportee engage in illegal "sexual activity" without intending "sexual . . . abuse"? Deakins does not argue this point. Nor do we think he could.

The term "sexual abuse" is quite broad. It "includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children."[4] 18 U.S.C. § 3509(a)(8). "Sexually explicit conduct," which is one form of "sexual abuse," includes "actual or simulated" "sexual intercourse," of all forms, "bestiality," "masturbation," "lascivious exhibition of the genitals or pubic area of a person," and "sadistic or masochistic abuse." *Id.* § 3509(a)(9). And "exploitation," another form of "sexual abuse," includes "child pornography." *Id.* § 3509 (a)(6). If there is any illegal "sexual activity" not captured by this definition of "sexual abuse," Deakins does not tell us what it might be.

Take, for example, the two offenses listed in Deakins's indictment as the intended illegal acts for which Deakins transported C.C.: sexual exploitation of a minor, *see* 18 U.S.C. § 2251(a), and unlawful sexual activity with certain minors,[5] *see* Fla. Stat. Ann. § 794.05. Each of these offenses necessarily involves "sexual abuse." *See Coutentos*, 651 F.3d at 816–17 ("[T]he offense of producing child pornography [under § 2251] involves the 'sexual abuse' of a

---

[4]Section 3283 does not define "sexual abuse" or cross-reference other statutory provisions. However, we can apply the definition of "sexual abuse" found in 18 U.S.C. § 3509(a)(8). Three circuits have done the same. *See United States v. Diehl*, 775 F.3d 714, 720 (5th Cir. 2015); *United States v. Coutentos*, 651 F.3d 809, 816–17 (8th Cir. 2011); *United States v. Carpenter*, 680 F.3d 1101, 1103 (9th Cir. 2012). That move makes sense because Congress, consolidating various statutes of limitations into a single chapter, transferred the child abuse statute of limitations from § 3509(a) to § 3283. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 330018, 108 Stat. 1796; *Diehl*, 775 F.3d at 720 (noting the statutory transfer); *Coutentos*, 651 F.3d at 816 (same); *Carpenter*, 680 F.3d at 1103 (same).

[5]Unlawful sexual activity under Fla. Stat. Ann. § 794.05 is a statutory-rape offense. *Feliciano v. State*, 937 So. 2d 818, 819 (Fla. Dist. Ct. App. 2006). It prohibits "[a] person 24 years of age or older" from "engag[ing] in sexual activity with a person 16 or 17 years of age." Fla. Stat. Ann. § 794.05(1) (1996). The version of the statute in place when Deakins transported C.C. defined "sexual activity" to mean "oral, anal, or vaginal penetration by, or union with, the sexual organ of another." *Id.*

child as that term is defined in § 3283."); *Diehl*, 775 F.3d at 720 ("[U]sing children to engage in sexually explicit conduct . . . constitutes 'sexual abuse' of a child."). Therefore, to convict Deakins, the government necessarily had to prove that he trafficked a minor with the intent that the child be sexually abused.

In sum, *Noveck* held that perjury was not an offense "involving the defrauding or attempts to defraud the United States" because "the alleged purpose to defraud the United States [was] not an element of the crime . . . on which the indictment [was] based." 271 U.S. at 203. Here, by contrast, intended sexual abuse is a necessary ingredient of the trafficking charge. So, even if *Noveck*'s approach applies here, Deakins's offense was one "involving" child "sexual . . . abuse." 18 U.S.C. § 3283. Section 3283 applies, and the government's charging of Count One was timely.

## B.

Deakins next argues that the operative indictment failed to properly charge the first three counts. We reject that claim.

A federal indictment must charge each element of the crime, fairly inform the defendant of the charges, and protect the defendant against double jeopardy. *See, e.g.*, *United States v. Rankin*, 929 F.3d 399, 404–05 (6th Cir. 2019). Generally, an indictment is sufficient if it charges the offense "in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). However, the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense . . . with which he is charged." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citation omitted). In other words, the indictment must, to some extent, "descend to particulars." *Valentine v. Konteh*, 395 F.3d 626, 633 (6th Cir. 2005) (citation omitted). We review the sufficiency of an indictment de novo. *McAuliffe*, 490 F.3d at 531.

1.

Count One charged Deakins with the interstate transportation of an individual to engage in criminal sexual activity, *see* 18 U.S.C. § 2421 (1998). The indictment alleged that Deakins "knowingly transported a minor, (C.C.), in interstate commerce" from Tennessee to Florida "with the intent that such person engage in any sexual activity for which any person can be charged with a criminal offense." R. 75, Third Superseding Indictment, PageID 353 (citing 18 U.S.C. § 2421). The indictment further specified two offenses for which "a person could have been charged": sexual exploitation of a child, *see* 18 U.S.C. § 2251(a), and unlawful sexual activity with certain minors under Florida law, *see* Fla. Stat. Ann. § 794.05.

Count One was constitutionally sufficient. It tracked the language of § 2421 and listed each element. *Hamling*, 418 U.S. at 117. Moreover, it provided factual details on when (November 1998 to June 2000), where (Tennessee and elsewhere), and against whom (C.C.) the offense was committed. Those details were sufficient to "inform the accused of the specific offense." *Id.* at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

Deakins faults the indictment for not including either his or C.C.'s ages, or the exact *type* of sexual activity he intended to engage in with C.C. These items, he says, constitute elements of Florida unlawful sexual activity.

Deakins's argument fails. Section 2421 prohibits the interstate transport of any individual with the intent that such individual engage in "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421. But the elements of the criminal offense for which "any person can be charged" are not elements of § 2421. We concluded as much in *United States v. Hart*, 635 F.3d 850 (6th Cir. 2011), in which we addressed a neighboring statutory provision, § 2422(b), that similarly prohibits enticing individuals to engage in "sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). We held that "the underlying . . . criminal offenses are not elements of the federal offense." *Hart*, 635 F.3d at 856; *see also United States v. Roman*, 795 F.3d 511, 515 n.2 (6th Cir. 2015); *United States v. Sweet*, 107 F.4th 944, 959 (10th Cir. 2024) ("[T]he Government

was not required to list in the indictment every unlawful 'sexual activity' to be proven at trial . . . .").

Although *Hart* addressed § 2422(b) rather than § 2421, the relevant statutory language is the same in both statutes.  18 U.S.C. §§ 2421(a), 2422(b).  We see no reason to give differing constructions to *identical* language in two neighboring statutory provisions.  Because the elements of the intended offenses are not elements of § 2421, the government had no obligation to include them in the indictment.  Thus, Count One was sufficient.

2.

Deakins further argues that Counts Two and Three of the indictment provided insufficient detail.  Counts Two and Three charged Deakins with exploitation of a child, *see* 18 U.S.C. § 2251(a).  That provision prohibits anyone from employing, using, persuading, inducing, enticing, or coercing a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," so long as a jurisdictional hook implicating interstate commerce is present.  *Id.*  Deakins argues that Counts Two and Three "ma[de] absolutely no attempt to explain *which acts* the grand jury determined constituted 'sexually explicit conduct.'"  Appellant Br. at 24 (emphasis added).

Like Count One, Counts Two and Three tracked the statutory language verbatim, which is generally sufficient.  *See, e.g.*, *Hamling*, 418 U.S. at 117.  Plus, the indictment included factual details regarding when (2006 to 2007; June to September 2018), where (Tennessee), and against whom (B.A.; J.G.) the offenses were committed.  Thus, the indictment in fact described "a particular criminal act" rather than merely "a type of crime."  *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000).  As explained above, the indictment didn't need to detail the "sexually explicit conduct" that Deakins engaged in with B.A. and J.G., and Deakins does not explain how Counts Two and Three either failed to protect him from double jeopardy or provide adequate notice of the charges against him.  Thus, the indictment sufficiently charged Counts Two and Three.

C.

Deakins next argues that the evidence for each count was insufficient.  We review de novo a challenge to the sufficiency of the evidence.  *United States v. Sykes*, 65 F.4th 867, 880 (6th Cir. 2023).  We ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  That standard does not change when reviewing a bench trial.  *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992).  We draw every reasonable inference from the evidence in the government's favor.  *Id.*

1.

Deakins launches several attacks against the sufficiency of the evidence to support his § 2421 conviction.  All fail.

*Intent*.  First, Deakins argues that there was insufficient evidence to conclude that sex motivated his interstate transportation of C.C.  But a rational trier of fact could have found that Deakins transported C.C. across state lines "with intent" that C.C. engage in unlawful sexual activity.

To understand the mens-rea requirement here, some exposition is required.  The original Mann Act—forerunner to the modern § 2421—criminalized transporting in interstate commerce "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose."  Mann Act, Pub. L. No. 61-277, ch. 395, 36 Stat. 825 (1910) (codified as amended at 18 U.S.C. §§ 2421–24).  Interpreting that version of the Mann Act, the Supreme Court suggested that the defendant's improper purpose needed to be the "*dominant* motive of such interstate movement."  *Mortensen v. United States*, 322 U.S. 369, 374 (1944) (emphasis added); *see also Hansen v. Haff*, 291 U.S. 559, 562–63 (1934).  After *Mortensen*, this court clarified that the government need not prove that sexual conduct was the *sole* purpose of the interstate transportation.  *See United States v. Salter*, 346 F.2d 509, 511 (6th Cir. 1965).  Rather, we stated that "[i]t is sufficient if prostitution was only *one of* the dominant purposes."[6]  *Id.*

---

[6]Many of our sister circuits have held the same.  *United States v. Ellis*, 935 F.2d 385, 389–90 (1st Cir. 1991); *United States v. Campbell*, 49 F.3d 1079, 1082 (5th Cir. 1995); *United States v. Vang*, 128 F.3d 1065, 1070–

(emphasis added).  We likewise clarified that the mens-rea element concerns not the defendant's motivation for "making the interstate trip" as a whole, but rather the defendant's "purpose in transporting the [victims]." *United States v. Harris*, 480 F.2d 601, 602 (6th Cir. 1973).

In 1986, Congress changed the Mann Act's text.  *See* Child Sexual Abuse and Pornography Act of 1986, Pub. L. No. 99–628, § 5, 100 Stat. 3510.  The *Mortensen*-era Mann Act required that the transportation be "*for the purpose*" of prostitution or other debauchery; the current statute requires that the transportation be done "*with intent*" that the individual engage in prostitution or other unlawful sexual activity.  Several circuits have noted this change, suggesting that the change might have "lessened the prosecution's burden," though without deciding as much.  *United States v. Cole*, 262 F.3d 704, 709 (8th Cir. 2001); *see also Ellis*, 935 F.2d at 391–92.  But here we need not delineate any supposed distinctions between *purpose* and *intent*.  *Cf.* Model Penal Code § 1.13(12) ("'[I]ntentionally' or 'with intent' means 'purposely.'").[7]  Even assuming that this circuit's version of the "dominant purpose" test remains good law, a reasonable factfinder could have inferred that "one of" Deakins's "dominant" intentions in transporting C.C. across state lines was that he engage in unlawful sexual conduct.  *Salter*, 346 F.2d at 511.

The trial court, as factfinder, was permitted to make such an inference from circumstantial evidence, including Deakins's prior and subsequent conduct.  *See United States v. Farber*, 336 F.2d 586, 588 (6th Cir. 1964); *United States v. Stackhouse*, 105 F.4th 1193, 1204 (9th Cir. 2024) ("[A] pattern of [past] sexually assaultive conduct can support an inference of intent to commit sexual assault while travelling interstate before [a later] assault."); *see generally* 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(f) (Oct. 2024 update).  A pattern of prior sexual assault certainly existed here: Deakins had sexually abused C.C. for approximately five years leading up to the Florida trip.  And that abuse continued once the parties crossed state

---

72 (7th Cir. 1997); *United States v. Perkins*, 948 F.3d 936, 939 (8th Cir. 2020); *United States v. Flucas*, 22 F.4th 1149, 1154–55 (9th Cir. 2022).

[7]The government asks us to follow the lead of yet other circuits which have characterized *Mortensen*'s dominant-purpose language as dictum.  *See United States v. McGuire*, 627 F.3d 622, 625 (7th Cir. 2010); *United States v. Snow*, 507 F.2d 22, 24 (7th Cir. 1974); *Schneider*, 801 F.3d at 194.  Given our prior caselaw relying on *Mortensen*, we question whether that path is open to this panel, but we need not decide that issue here.

lines.  That too supports an inference of intent.  *Farber*, 336 F.2d at 588; *Stackhouse*, 105 F.4th at 1203–04.  Thus, a reasonable factfinder could have found the mens-rea element of § 2421 satisfied.

*Florida statutory rape*.  Deakins next argues that he had no specific intent to commit Florida statutory rape—one of the underlying offenses listed in the indictment.  The government, Deakins says, needed to prove his awareness of C.C.'s age because a mistake of fact would preclude liability under Fla. Stat. Ann. § 794.05.  But that argument is built on a false premise.  To convict, the government simply needed to show that Deakins transported C.C. "with intent" that C.C. engage in "sexual activity," and that the intended sexual activity was in fact illegal.  *See, e.g.*, *United States v. Kelly*, 128 F.4th 387, 413–14 (2d Cir. 2025).  But that did not oblige the government to prove Deakins's awareness of C.C.'s age.  Florida statutory rape is a strict liability offense.  *See, e.g.*, *Feliciano*, 937 So. 2d at 819 (citing Fla. Stat. Ann. § 794.021 (2003)).  Ignorance or mistake as to the victim's age is no defense.  *Id.* at 820.  So regardless of Deakins's knowledge of C.C.'s age, a reasonable factfinder could have found that Deakins transported C.C. with the intent that C.C. engage in criminal sexual activity.[8]

Deakins finally argues that the sexual conduct he intended C.C. to commit could not have constituted Florida statutory rape because the Florida statute does not apply where the minor victim has been emancipated—i.e., where he "has had the disabilities of nonage removed." Fla. Stat. Ann. § 794.05(3).  But the record contains no indication that any Florida court removed C.C.'s disability of nonage—a process open only to Florida residents, upon the petition of their parent, guardian, or guardian ad litem.[9]  *See id.* § 743.015(1).  Therefore, a reasonable factfinder

---

[8]The government's briefing understands Deakins as arguing that criminal liability under § 2421 turns on the defendant's specific intent that the transportee engage in certain conduct *because* it is illegal.  To the extent that is Deakins's argument, we reject it.  Section 2421's mens-rea requirement does not attach *to the legal status* of the intended sexual conduct.  That interpretation would restrict the statute's scope "to cover only those who fetishize lawbreaking." *United States v. Moreira-Bravo*, 56 F.4th 568, 578 (8th Cir. 2022).  Rather, to satisfy the chargeable-offense element, the criminal sexual activity that the defendant intends the transportee to engage in must simply *be* illegal, whether or not the defendant desires to break the law.

[9]In a near frivolous argument, Deakins points to an exchange at trial, during which Deakins's counsel asked C.C. whether he had any "disabilities" when he traveled to Florida with Deakins.  R. 140, Trial Tr., PageID 1545.  C.C. indicated that he did not.  But the question posed to C.C. referenced disabilities *generally*; it did not reference a "disability *of nonage*," which appears to be a legal term of art under Florida law.  No context suggested

could have found that the sexual activity Deakins intended C.C. to commit was in fact illegal under Florida law.

2.

Deakins next challenges the sufficiency of the evidence for Counts Two and Three, which charged Deakins with sexual exploitation in violation of 18 U.S.C. § 2251(a). Section 2251(a) criminalizes employing, using, persuading, inducing, enticing, or coercing a minor to engage in any "sexually explicit conduct for the purpose of producing any visual depiction of such conduct" so long as an interstate nexus is present.

*Mens rea*. Deakins first argues that he lacked the requisite intent: he did not sexually exploit B.A. and J.G. "for the purpose of producing any visual depiction."

Section 2251 establishes a specific-intent crime. *United States v. Frei*, 995 F.3d 561, 566 (6th Cir. 2021). Although the government needed to show that Deakins sexually exploited his victims "for the purpose of producing any visual depiction," producing child pornography need not have been Deakins's *sole* purpose. *Id.*; *see also United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012). *Cf. United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) (Calabresi, J.) (A man "is no less a child pornographer simply because he is also a pedophile.").

The government may prove the mens-rea element of § 2251 via direct or circumstantial evidence. *See United States v. Torres*, 894 F.3d 305, 311–12 (D.C. Cir. 2018). Circumstantial evidence of various stripes may reveal the defendant's intent. First, the defendant's conduct "before, during, or after" the sexual exploitation may suggest an intent to produce child pornography. *Id.* at 311. Some examples include purchasing expensive recording equipment, *see United States v. Rider*, 94 F.4th 445, 458 (5th Cir. 2024); using a camera and a tripod to record the encounter and selecting a particular location with recording conditions in mind, *Lebowitz*, 676 F.3d at 1013; lying to the victim about recording the abuse or "record[ing] images surreptitiously," *Torres*, 894 F.3d at 312; and instructing the victim "regarding certain positions

---

this specialized meaning, so C.C. likely understood "disability" in the ordinary sense of the word. Deakins presents no evidence to the contrary.

he wanted [the victim] to assume relative to the camera," *United States v. Morales-de Jesus*, 372 F.3d 6, 21 (1st Cir. 2004). All suggest a specific intent to produce child pornography.[10]

In addition to the defendant's conduct, the number of sexually explicit photos or videos may support an inference of purpose. *United States v. Ortiz-Graulau*, 526 F.3d 16, 19 (1st Cir. 2008). The larger the defendant's "collection" of child pornography, the stronger the inference that the sexual exploitation was undertaken "for the purpose of" producing child pornography.

Here, a reasonable factfinder could have concluded that Deakins sexually exploited both B.A. and J.G. "for the purpose of" producing child pornography. First, evidence showed that Deakins secretly recorded his encounters with both children. The surreptitious nature of Deakins's conduct supports an inference of purpose. *Torres*, 894 F.3d at 312; *Morales-de Jesus*, 372 F.3d at 21. Second, Deakins created many photos and videos. In addition to the thousands of images Deakins downloaded from the internet, he created at least nine images or videos of J.G. and more than a dozen images and videos of B.A. The extent of his collection supports a finding of the requisite purpose. *Ortiz-Graulau*, 526 F.3d at 19.

Third, the nature of the visual depictions themselves supports an inference of Deakins's purpose. Deakins took photographs measuring both B.A.'s and J.G.'s genitalia, and he took various photographs of J.G., including one depicting J.G. wearing lipstick with his genitalia exposed. That the depictions go well beyond the recording of a sex act supports an inference that Deakins sexually exploited B.A. and J.G. "for the purpose of" producing child pornography. Moreover, the record reflects that Deakins instructed B.A. and J.G. on how to pose for some of the photos, and one could reasonably infer, from the photos themselves, that Deakins instructed his victims on how to pose for others. *See Morales-de Jesus*, 372 F.3d at 21–22.

Fourth, Deakins organized the photos and videos of B.A. and J.G. on his computer. To store the material electronically, Deakins created copies of the photos and videos. That post hoc conduct suggests an interest in creating and possessing child pornography, even if post hoc

---

[10]We don't mean to provide an exhaustive catalogue of relevant conduct. The point is that various behavior might provide indirect support from which a factfinder could reasonably infer the required specific intent to create child pornography.

conduct is weaker evidence than pre-exploitation conduct. *See Torres*, 894 F.3d at 325 (Williams, J., concurring in part and dissenting in part).

In sum, sufficient evidence existed from which a reasonable factfinder could have inferred that Deakins sexually abused B.A. and J.G. for the purpose of producing child pornography.

*The jurisdictional element.* Deakins next argues that the government failed to prove the "jurisdictional hook" in § 2251—a connection between the offense and interstate commerce. *United States v. Lively*, 852 F.3d 549, 559 (6th Cir. 2017). The government's theory was that the jurisdictional hook was present because Deakins "produced [the visual depictions] using materials that ha[d] been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer."[11] 18 U.S.C. § 2251(a) (2006).

The government sufficiently proved that element by showing that the cameras and devices used to produce the images of B.A. and J.G. were manufactured outside Tennessee. *See Sykes*, 65 F.4th at 881–82; *Lively*, 852 F.3d at 564; *United States v. Napier*, 787 F.3d 333, 346 (6th Cir. 2015). With B.A., Deakins used a Canon camera and an "unknown device." R. 140, Trial Tr., PageID 1734. With J.G., Deakins used a Samsung phone. A reasonable factfinder could have concluded that all three were manufactured outside Tennessee. Agent Moore testified that Canon cameras are manufactured in Japan, and the Samsung phone was manufactured in South Korea. As to the "unknown device," Moore testified that there are no devices "made from components within the state of Tennessee capable of making a video like the one that was recovered depicting [B.A.]." *Id.* at 1694. Thus, Moore's testimony supported a finding that all three devices Deakins used were transported in interstate commerce.

Deakins offers two arguments in response. First, Deakins contends that the government had to prove that he "directly purchased" the devices "from an out-of-state source."

---

[11]Section 2251(a) was subsequently amended in 2008 to require that the visual depiction was "produced using materials that have been mailed, shipped, or transported in *or affecting* interstate or foreign commerce." *See* 18 U.S.C. § 2251(a) (2008) (emphasis added). Deakins produced the images of J.G. well after 2008. However, as the government's briefing acknowledges, both Counts Two and Three charged the jurisdictional element using the language of the 2006 statute.

Appellant Br. at 37, 42. Not so. Section 2251(a) references materials that "have been mailed, shipped, or transported in interstate or foreign commerce." The text doesn't require that the defendant be either the direct recipient or the direct purchaser. And none of our cases have required such a showing. *See Sykes*, 65 F.4th at 881–82; *Lively*, 852 F.3d at 564; *Napier*, 787 F.3d at 346.

Deakins next argues that Agent Moore's testimony reached only *current* manufacturing practices not past ones. Thus, says Deakins, Moore's testimony failed to prove that the devices Deakins used were not manufactured in Tennessee. But read in context, Moore's testimony covered devices both old and new.

Here is the relevant exchange:

Q: In your career from the Army through the terrorism through child pornography investigations, have you examined numerous devices?

A: Hundreds.

Q: And are you aware—even old devices. Is that correct?

A: Correct.

Q: Are you aware if there are any devices made from components within the state of Tennessee capable of making a video like the one that was recovered depicting [B.A.]?

A: Absolutely not.

Q: And you've heard mention that there was a Canon camera used in one of those. Are you aware if Canon is a brand or a product that is made . . . entirely within the state of Tennessee?

A: It is not.

Q: Where is it made?

A: Japan.

R. 140, Trial Tr., PageID 1693–94. Given the immediately preceding reference to "old devices," Moore's responses are reasonably understood to cover *all* devices currently in circulation—not just current manufacturing practices. So too for Moore's testimony regarding the Samsung phone's manufacturing in South Korea. Moreover, Deakins never suggests that any device he used to create the photos and videos was in fact manufactured wholly in Tennessee—or even that

any such device exists (or ever existed). In sum, a reasonable factfinder could have concluded that all three devices used by Deakins were manufactured outside Tennessee.

*Sexually explicit conduct*. Deakins also argues that the photos and videos he created did not constitute "sexually explicit conduct." Once again, that argument fails.

The photos and videos Deakins created qualify as depictions of sexually explicit conduct. Section 2256 defines "sexually explicit conduct" to mean "sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person."[12] 18 U.S.C. § 2256(2)(A)(i)–(v) (2003) (cleaned up). Some of the depictions— for example, a video of B.A. having anal sex with Deakins—obviously depict "sexual intercourse" itself. Others, including photos of J.G., qualify as lascivious.

Because the statute does not define "lascivious," we utilize a six-factor test to determine "whether a particular image is lascivious." *United States v. Jakits*, 129 F.4th 314, 322–23 (6th Cir. 2025) (citation omitted). The images here satisfy the test. To start, J.G.'s exposed genitalia is "the focal point of" multiple images. *Id.* at 323 (citation omitted). In one, J.G. is wearing lipstick with his penis exposed; in a second, he is measuring his penis; a third shows him on Deakins's bed with his penis exposed; a fourth captures J.G.'s and Deakins's penises next to one another's. All four images are highly "sexually suggestive." *Id.* (citation omitted). At least some of the images—particularly the ones in which J.G. is measuring his penis and J.G.'s and Deakins's penises are exposed next to one another—also seem "intended or designed to elicit a sexual response in the viewer." *Id.* (citation omitted). A reasonable factfinder could have deemed the images lascivious.[13]

---

[12]Count Two (i.e., exploitation of B.A.) is governed by the 2003 version of the statute. Count Three (i.e., exploitation of J.G.) is governed by the 2018 version of the statute, which is identical in all relevant respects, except for the fact that the 2018 version of the statute includes the "lascivious exhibition of the anus" within its definition of "sexually explicit conduct." 18 U.S.C. § 2256(2)(A)(v) (2018).

[13]This conclusion also disposes of Deakins's challenge to the district court's application of the statutory aggravator found in 18 U.S.C. § 2252A(b)(2). The statute provides that anyone who possesses child pornography shall be eligible to receive a sentence up to twenty years (rather than ten) "if any image of child pornography involved in the offense involved a prepubescent minor or a minor" younger than twelve. 18 U.S.C. § 2252A(b)(2). Deakins concedes that J.G. was younger than twelve, but he argues that the images of J.G. are not "lascivious," and therefore do not qualify as child pornography as defined in § 2256(2)(A). Because we have determined otherwise

Deakins also contends that no depiction taken by the Canon camera can support a conviction. One video introduced into evidence shows Deakins using a Canon camera to photograph B.A.'s penis next to a measuring stick, but the photo itself is not in evidence. Deakins asserts that without the photo taken by the Canon camera, "it is impossible to say that the image qualifies" as lascivious. Appellant Br. at 38.

But setting aside any image created by the Canon camera gets Deakins nowhere. The video that depicts Deakins using the Canon camera to measure and photograph B.A.'s penis (and which obviously was not created by the Canon camera) is itself lascivious. And nothing turns on the number of lascivious depictions—a single one will support a conviction. *Jakits*, 129 F.4th at 325. So, this argument fails.

3.

Deakins next alleges there was insufficient evidence to support his conviction for possession of child pornography under 18 U.S.C. § 2252A. We disagree.

Section 2252A prohibits the knowing possession of "any book, magazine, periodical, film, videotape, computer disk, *or any other material* that contains an image of child pornography." 18 U.S.C. § 2252A(a)(5)(B) (emphasis added). Deakins argues that he did not possess any child-pornography-containing "material," as that word is used in the statute. He points to trial testimony establishing his possession of various devices that qualify as "computers or computer disks." R. 140, Trial Tr., PageID 1705. The district court found that those devices "contained numerous" images of child pornography. R. 151, Findings of Fact & Conclusions of Law, PageID 2090. But Deakins boldly suggests that those "computer disks" are not "material" because "material" must mean something other than the statutorily enumerated items like computer disks. Appellant Br. at 46–47. Deakins says that alleged difference matters because the government charged Deakins only with possessing "*material* which contained an image of child pornography" rather than with possessing "computer disks" containing child pornography.

and lascivious images of minors constitute child pornography, *see id.* § 2256(2)(A)(v), (8)(A), his objection to the sentencing enhancement fails.

R. 75, Third Superseding Indictment, PageID 354 (emphasis added).  And the government's proof may not exceed the scope of the indictment.

But, of course, computer disks are material.  *See United States v. Knowlton*, 993 F.3d 354, 357 (5th Cir. 2021) ("[T]he computer files themselves are plainly material containing child pornography.").  The specifically enumerated items in § 2252A—like books and computer disks—are merely non-exhaustive examples of "material" covered by the statute.  Thus, despite not specifically mentioning "computer disks," the indictment covered all material *including computer disks*.  So Deakins was not somehow convicted for an offense not charged in the indictment.  And the evidence certainly showed that Deakins possessed such material.

Deakins makes several other arguments in passing, but all fail.  He disputes whether the government has met its burden of proving the jurisdictional element for Count Four.  As in § 2251, the government may prove § 2252A's jurisdictional element by showing that the child pornography "was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."  18 U.S.C § 2252A(a)(5)(B).  And as previously discussed, *see supra* at II.C.2, Deakins himself "produced" the child pornography he possessed, using materials manufactured outside Tennessee.  Therefore, the government met its burden of proving the jurisdictional hook.

As a fallback, Deakins suggests that if a computer file counts as "material," then the government cannot prove the jurisdictional element.  This conclusion, as Deakins frames the matter, follows from two premises.  First, the computer files possessed by Deakins are the "image[s] of child pornography," which § 2252A(a)(5)(B) prohibits the possession of.  Second, a file cannot produce itself.  Therefore, the files Deakins possessed were not "produced using materials" transported in interstate commerce.

But this argument merely conflates two separate uses of "material(s)" in § 2252A(a)(5)(B).  That subsection first refers to the "material that contains an image of child pornography."  *Id.*  As we have just explained, that "material" includes computer disks. The statute then separately refers to child pornography "produced using materials" transported in interstate commerce.  *Id.*  "Materials" here refers to the tools used to *create* the images—for

instance, the Canon camera, or the Samsung phone—not the physical objects like computer disks that *contain* the images of child pornography. Deakins's argument simply confuses the statute's first use of "material" for the latter use of "materials." That computer files are "material" has no bearing on whether the images were "produced using materials" transported in interstate commerce.

4.

Deakins briefly challenges the sufficiency of the evidence for his conviction on Count Five. To convict Deakins on this count, the government had to prove that Deakins (1) committed the offenses alleged in Count Three; and (2) was required to register as a sex offender under state law at the time he committed the offense. 18 U.S.C. § 2260A (2006). A conviction under § 2260A subjects the offender to an additional ten years' imprisonment. *Id.* Deakins simply argues that his § 2260A conviction cannot be sustained because his Count Three conviction for sexually exploiting J.G. cannot be sustained. But a reasonable factfinder could have found Deakins guilty on Count Three. *See supra* at II.C.2. And Deakins does not challenge the fact that he was required to register as a sex offender at the time he sexually exploited J.G.; thus, the evidence was sufficient.

D.

Finally, Deakins argues that the district court erred by applying a sentencing enhancement based on Deakins's prior Tennessee convictions for sexual exploitation. But this argument fares no better than his others.

18 U.S.C. § 2251(e) subjects those who repeatedly sexually abuse children to stricter punishment. The baseline range for a § 2251 conviction is fifteen to thirty years. 18 U.S.C. § 2251(e). But prior convictions increase the penalty. A defendant with two or more prior convictions "under . . . the laws of any State relating to the sexual exploitation of children . . . shall be . . . imprisoned not less than 35 years nor more than life." *Id.*

The district court concluded that the enhancement applied to Deakins because he had three prior convictions relating to the sexual exploitation of children. Deakins was previously

convicted of statutory rape, especially aggravated sexual exploitation of a minor, and sexual exploitation of children under Tennessee law.

To determine whether Deakins's Tennessee convictions subject him to the § 2251(e) enhancement, we apply the categorical approach. *See Sykes*, 65 F.4th at 884. As discussed above, that approach focuses our inquiry on the crime's elements rather than the defendant's actual conduct. *See Mathis*, 579 U.S. at 504. However, the § 2251(e) enhancement "does not require a perfect match between the predicate offense and enhancement-qualifying conduct." *Sykes*, 65 F.4th at 885. Rather, the statute requires only that Deakins's Tennessee convictions "relat[e] to the sexual exploitation of children." *Id.* at 887 (quoting § 2251(e)). Put another way, prior convictions "*associated with*" the sexual exploitation of children trigger the enhancement. *United States v. Mateen*, 806 F.3d 857, 861 (6th Cir. 2015) (emphasis added). So, employing the categorical approach, we ask whether the elements of Deakins's previous convictions relate to or are associated with the sexual exploitation of children. *Sykes*, 65 F.4th at 884–85.

All three of Deakins's Tennessee convictions relate to the sexual exploitation of children. We have given "sexual exploitation," as used in § 2251(e), a broad meaning, covering "the use of a person, especially a child, in prostitution, pornography, or other sexually manipulative activity." *Id.* at 887 (citation modified). In *Sykes*, we explicitly held that Tennessee statutory rape categorically relates to the "sexual exploitation of children."[14] *Id.* Deakins's other two state-court convictions are for sexual exploitation, one of which was "especially aggravated." Deakins does not even try to show how Tennessee sexual exploitation (either especially aggravated or non-aggravated) does not "relate to" sexual exploitation as that term is used in § 2251(e).

Instead, Deakins argues that the Tennessee offenses don't necessarily involve "children." Citing other federal statutes, Deakins suggests that "children" in § 2251(e) is limited to those younger than sixteen. By contrast, the provisions of Tennessee law under which he was convicted reach conduct involving seventeen-year-olds. *See* Tenn. Code Ann. § 39-17-1002(5)

---

[14]Tennessee law defines statutory rape as "the unlawful sexual penetration of a victim by the defendant or of the defendant by the victim when" the victim and defendant fall into certain age ranges. Tenn. Code Ann. § 39-13-506(b).

(defining "minor" as "any person who has not reached eighteen"). So Deakins contends that his state convictions for sexual exploitation do not categorically "relate to" the sexual exploitation of "children."

We reject that argument. As we read § 2251(e), "children" refers to individuals under *eighteen*. So, the Tennessee statutes under which Deakins was convicted are not overbroad.

Some sources are little help in determining the scope of "children" in § 2251(e). First, the statute itself provides no definition. Lacking a statutory definition, we normally turn next to dictionaries to discern a word's ordinary meaning. *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022). But "child" can have several meanings. For instance, it can mean "[a]n unemancipated person under the age of majority" or, more generally, "[a] boy or girl; a young person." *See Child*, *Black's Law Dictionary* (12th ed. 2024). *Black's Law Dictionary* also provides a narrow common-law definition—"a person who has not reached the age of 14." *Id.* Or "child" can mean "[a] person between birth and puberty," "[a] human fetus," "[a]n infant" or "baby," or "[o]ne who is childish or immature." *Child*, *American Heritage College Dictionary* (4th ed. 2007). None of those definitions mentions either those under *sixteen* or *eighteen*—the two age limits proposed by the parties here.

But when interpreting statutes, we do not stare at the words on the page in isolation. *Gundy v. United States*, 588 U.S. 128, 140–41 (2019). Rather, we interpret statutes in context. *Id.*; *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Statutory context includes both "the specific context in which" a particular word or phrase is used and "the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Here, the broader statutory context suggests that "children" in § 2251(e) means anyone under *eighteen*. Several contextual clues support that reading.

First, § 2251(e) itself uses "child" to mean anyone under eighteen—at least when it comes to child pornography. Section 2251(e) lists "child pornography" as one offense that triggers the very same sentencing enhancement as that triggered by a conviction relating to the sexual exploitation of children. Section 2256, which provides definitions for the chapter, including § 2251(e), defines child pornography as meaning any visual depiction where "the

production . . . involves the use of a *minor*." 18 U.S.C. § 2256(8)(A) (emphasis added). And § 2256 defines "minor" as any person younger than eighteen. *Id.* § 2256(1). It would seem quite odd for Congress to have understood "child pornography" and "the sexual exploitation of children"—which trigger *the same sentencing enhancement*—as incorporating different age limits. Moreover, "[i]n a given statute, the same term usually has the same meaning." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Were that not the case here, we suspect Congress would have made that clear.

Second, although a bit further afield, the statute of limitations for offenses against children addresses offenses involving "a child *under the age of 18*." 18 U.S.C. § 3283 (emphasis added). The presumption of consistent usage "can hardly be said to apply across the whole *corpus juris*," but it has more force when applied to another provision addressing "the same subject." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172–73 (2012). Here, that subject is criminal sexual prohibitions related to children—far narrower than the whole *corpus juris*.

Third, statutory titles sometimes refer to "children" but, in substance, prohibit various actions involving *minors*. While statutory titles are certainly not controlling, they may function as "useful clue[s]." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation omitted). The laws that created §§ 2251 and 2251A both bear titles referring to "children." *See* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95–225, § 2, 92 Stat. 7, 7 (1978) (creating § 2251); Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100–690, § 7512, 102 Stat. 4181, 4485–86 (creating § 2251A). The same is true of the statutory titles in the U.S. Code. *See* 18 U.S.C. §§ 2251 ("Sexual exploitation of children"), 2251A ("Selling or buying of children"). But in substance, those statutes repeatedly refer to *minors*. *See id.* §§ 2251, 2251A. Thus, the statutory titles suggest that Congress, at least in this context, employs no sharp distinction between "child" and "minor."

Supreme Court precedent also suggests that we should favor an interpretation of "children" in § 2251(e) that includes seventeen-year-olds. In the course of applying sentencing enhancements, we have been reticent to interpret federal law "in a way that would disqualify a significant number of state [offenses]." *United States v. Brown*, 957 F.3d 679, 686 (6th Cir.

2020); *see also Quarles v. United States*, 587 U.S. 645, 653–54 (2019); *Stokeling v. United States*, 586 U.S. 73, 81 (2019). That result, the Supreme Court has told us, "would defeat Congress' stated objective of imposing enhanced punishment on" repeat offenders. *Quarles*, 587 U.S. at 654. Thus, the Supreme Court's directive puts another thumb on the scale in favor of interpreting "children" in § 2251(e) to include seventeen-year-olds.

Deakins offers little in response. He rightly points out that the term "child" lacks a uniform legal meaning. Sometimes, Congress has defined the term in ways that make it not synonymous with "minor." For purposes of international parental child kidnapping, for example, "the term 'child' means a person who has not attained the age of 16 years." 18 U.S.C. § 1204(b)(1).[15] But, contrary to Deakins's assertion, that disuniformity provides no occasion for invoking the rule of lenity. Lenity kicks in only after a court has "seiz[ed] everything from which aid can be derived" and still "can make no more than a guess as to what Congress intended." *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (citation omitted). As demonstrated above, § 2251(e) does not create such "grievous ambiguity or uncertainty," *id.*, so lenity has no purchase here.

\* \* \*

For the foregoing reasons, we AFFIRM.

---

[15]We do not decide here that throughout the U.S Code, or even Title 18, the term "child" should, by default, be read to mean "minor." The parties here have not argued for such a broad proposition. We hold only that, as used in § 2251(e), "child" means a person under the age of eighteen.